## EDWARD v. IOOR.

1. CORPORATIONS—FOREIGN CORPORATIONS—COMPLIANCE WITH STATUTES.

If a foreign corporation desires to carry on its business in this State it must comply with the provisions of the foreign corporation act (2 Comp. Laws 1915, § 9063 et seq.), and if it also desires to sell its stock or securities in this State it must comply with the provisions of the commission act (3 Comp. Laws 1915, § 11945 et seq.).

2. CONTRACTS—CORPORATIONS—SALE OF STOCK BY OWNER—DEALERS —STATUTES.

A sale of stock of a foreign corporation by the owner in this State was not a violation of the provisions of the commission act, where there were no "continued and successive transactions of a similar nature" contrary to the spirit of the act.

3. SALES—DEFINITION.

A sale is defined to be "an agreement whereby the seller transfers the property in goods to the buyer for a consideration called the price."

4. CONTRACTS—SALES—FOREIGN CORPORATIONS—SALE OF STOCK— STATUTES.

Where a foreign corporation exchanged its stock for that of other companies it was a sale of its stock within the meaning of the commission act.

See note in 29 L. R. A. (N. S.) 92.

5. Same—Void Contract—Sale of Stock—Penal Statute—Construction.

Under 3 Comp. Laws 1915, §§ 11958, 11967, prohibiting the sale of stock by any investment company or dealer without complying with the provisions of the statute, and providing a penalty for the violation thereof, a sale of stock in conflict therewith was void, although not expressly declared so to be by the statute.

6. Same—Rescission—Demand—Remedy.

Where plaintiff tendered back stock received by him under a void contract which he rescinded, he was entitled to be restored what he had parted with, and failure to restore it entitled him to its value.

7. Same—Estoppel.

That plaintiff executed a proxy for the annual meeting of the corporation to the defendant to whom he had tendered the stock and that plaintiff's counsel offered that a dividend paid after the suit was brought might be offset against plaintiff's claim, did not estop him from pursuing his remedy.

8. Same—Rescission—Assumpsit—Remedy—Value of Goods.

An action in assumpsit to recover the value of the goods parted with upon the rescission of a void contract, made, so far as defendants are concerned, in violation of the terms of a penal statute, is the proper remedy.

9. Same—Rescission of Void Contract—Demand Unnecessary.

Upon the rescission of a void contract plaintiff was entitled to what he had paid thereon, and no demand, under the circumstances, was necessary.

10. Same—Demand—Refusal—Entitled to Value of Goods.

Although upon plaintiff's rescission of the contract his claim would have been satisfied by the return to him of the stocks with which he parted, yet where his demand was refused, but not upon the ground that he demanded the amount of money invested in the original stocks rather than the stocks themselves, he is entitled to recover their value.

11. Same—Void Contracts—Liability of Several Defendants.

Where several defendants were engaged in a common enterprise in consummating a transaction contrary to the terms of a penal statute, it cannot be said, as a matter of law, that any of them should be exonerated from liability.

Error to Kent; McDonald, J. Submitted January 31, 1919. (Docket No. 39.) Decided May 29, 1919.

Assumpsit by William S. Edward against Walter Ioor and others for money paid on an illegal sale of stock. Judgment for defendants on a directed verdict. Plaintiff brings error. Reversed.

*C. G. Turner* and *Ellis & Ellis*, for appellant.

*Hatch, McAllister & Raymond, Joseph Renihan*, and *Charles A. Watt*, for appellees.

Plaintiff is a resident of Sault Ste. Marie and defendants have a common office in the city of Grand Rapids. Defendant United Vending Company is a corporation organized under the laws of the State of Arizona. It had been authorized to sell its stock in this State by the Michigan securities commission pursuant to the provisions of Act No. 46, Pub. Acts 1915 (3 Comp. Laws 1915, § 11945 *et seq.*), hereafter called the commission act, but had not complied with the provisions of Act No. 206, Pub. Acts 1901, as amended by Act No. 310, Pub. Acts 1907 (2 Comp. Laws 1915, § 9063 *et seq.*), hereafter called the foreign corporation act. Defendant National Piano Manufacturing Company of Illinois, hereafter called the Illinois Piano Company, had complied with the foreign corporation act but had not complied with the commission act. Defendant National Piano Manufacturing Company of Arizona, hereafter called the Arizona Piano Company, had complied with neither act. Defendant Michigan Securities Corporation is a Michigan corporation, and, it seems, has been licensed as a dealer under the provisions of the commission act. The status of the Sparta Manufacturing Company and of the National Automatic Music Company, both of which are mentioned in the record, but neither of which is made

defendant, does not clearly appear, nor is it important. The companies seem to possess interlocking directorates and defendant Ioor is president or secretary of some if not all of them and appears to be the dominant factor in them all.

Plaintiff purchased through the Michigan Securities Corporation 500 shares of stock of the United Vending Company, paying therefor $5,000 in cash. He also purchased from defendant Ioor 27 shares of stock in the Illinois Piano Company, paying therefor $6,750 in cash. Both of these stocks paid dividends and there is no evidence tending to show that they were not worth what he paid for them. It should also be stated that Sarah Tyndall purchased stock of the United Vending Company to the amount of $450 and plaintiff's son to the amount of $225.

Some time after the purchase of these stocks by plaintiff the directors of the United Vending Company, the Sparta Manufacturing Company and the Illinois Piano Company conceived the organization of the Arizona Piano Company to take over the stock of these companies, issuing stock in the new company in payment therefor. Plaintiff and other stockholders seem to have been informed of this plan. After correspondence, some of which was with the Michigan Securities Corporation, in which the advantages of carrying out such plan were impressed on plaintiff, he acquiesced in this transaction, sent his old stock to defendant Michigan Securities Corporation and received stock in the new Arizona Piano Company. Mrs. Tyndall and plaintiff's son did the same.

Prior to the bringing of this action, Mrs. Tyndall and plaintiff's son assigned their stock in the Arizona Piano Company in blank and delivered it to plaintiff, who paid them the amount they had invested. There is testimony in the case that all of the stock was tendered back before suit was brought by a representa-

tive of plaintiff's counsel, the tender being made to defendant Ioor; and there is testimony that in declining the tender he told the representative making it to "tell them to go to hell"; there is testimony that the representative demanded $12,425, the amount invested in the original stocks, and there is testimony that neither the original stocks or their value were ever delivered or paid to plaintiff. To review a judgment for defendants upon a directed verdict this writ of error issued.

FELLOWS, J. (*after stating the facts*). In disposing of the case the following questions will be considered:

(1) Is a foreign corporation required to comply with both the foreign corporation act and the commission act before offering its stock for sale in this State?

(2) Did the sale to plaintiff by the defendant Ioor of the 27 shares of stock in the Illinois Piano Company offend the commission act?

(3) Did the exchange of the Arizona Piano Company stock for the stock of the other companies constitute a sale within the meaning of the commission act?

(4) If so, may the plaintiff rescind the sale and recover the consideration paid?

(5) Estoppel.

(6) Other questions.

1. Under the provisions of the foreign corporation act (2 Comp. Laws 1915, § 9063 *et seq.*) a foreign corporation is required to comply with its provisions in order to "carry on its business in this State." Under the provisions of the commission act (3 Comp. Laws 1915, § 11945 *et seq.*) a foreign corporation, for the purposes of the act, is known as a "foreign investment company," and before selling, offering for sale, taking subscriptions for or negotiating for the sale in any manner its stocks or securities in this State, such foreign corporation must secure permission from

the Michigan securities commission. Compliance with the corporation act permits a foreign corporation to "carry on its business," the business for which it is organized in the State; compliance with the commission act permits it to sell its stock and other securities. One is not in any way dependent upon the other. One foreign corporation may desire to carry on its business in the State, but may not desire to sell stock; another may desire to sell stock but may not desire to carry on its business in the State. If a foreign corporation desires to carry on its business and also sell its stock in the State it is obvious that it must comply with both acts. It is equally obvious that if it desires to do but one of these things it is required to comply only with the provisions of the appropriate act.

2. The record discloses that defendant Ioor was the owner of 100 shares of stock of the Illinois Piano Company. He sold 27 of these shares to the plaintiff. He sold no other shares of stock of this company. Section 10 of the commission act (3 Comp. Laws 1915, § 11954) defines the term "dealer," and, so far as important here, provides:

"The term 'dealer' shall not include an owner, not issuer, of such securities so owned by him when such sale is not made in the course of continued and successive transactions of a similar nature."

This provision was thought important by the framers of this act to remove the question of unconstitutional taint, and preserve the constitutional right of the individual to sell his own stock, but by prohibiting "continued and successive transactions of a similar nature" prevented the abuse of that right and its exercise in a manner contrary to the spirit of the act. Mr. Ioor had the right to sell this stock to plaintiff. He did not by continued and successive transactions of a similar nature become a dealer. He was acting within his constitutional rights and by this sale to

plaintiff did not violate the act. No liability can be predicated on this transaction.

3. The plan contemplated by these defendants provided for the organization of a corporation under the laws of Arizona to take over and hold the stock in the other companies, giving its own stock in varying proportions in exchange therefor. It was to be largely a holding corporation. Did the exchange of its stock for that of the other companies constitute a sale within the meaning of the commission act? This court has defined a sale as follows:

"A sale is a parting with one's interest in a thing for a valuable consideration." *Western Massachusetts Ins. Co.* v. *Riker,* 10 Mich. 279.

"But every transfer of property for an equivalent is practically and essentially a sale, and the deed of bargain and sale is almost universally used to convey land so transferred. Money's worth is a valuable consideration, as much as money itself." *Huff* v. *Hall,* 56 Mich. 456.

Bouvier defines a sale as:

"An agreement whereby the seller transfers the property in goods to the buyer for a consideration called the price." 3 Bouvier's Law Dictionary, p. 2983.

This definition has been adopted by the legislature of this State in the uniform sales act (Act No. 100, Pub. Acts 1913, 3 Comp. Laws 1915, § 11832 *et seq.*).

We must assume that the legislature had in mind this well understood meaning of the word "sale" when the commission act was passed. If the act is not so construed, as was suggested upon the argument, one may exchange worthless stock for government bonds and escape with impunity. We are impressed that when the Arizona Piano Company exchanged its stock for that of other companies it was a sale of its stock within the meaning of the commission act.

4. Section 14 of the commission act (3 Comp. Laws 1915, § 11958) provides in part as follows:

"It shall be unlawful for any investment company or dealer, or representative thereof, either directly or indirectly, to sell or cause to be sold, offer for sale, take subscriptions for, or negotiate for the sale in any manner whatever in this State, any stocks, bonds or other securities (except as expressly exempted herein), unless and until said commission has approved thereof and issued its certificate in accordance with the provisions of this act."   *   *   *

Section 23 of the act (3 Comp. Laws 1915, § 11967) provides:

"Any person or persons who shall violate any of the provisions of this act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not more than one thousand dollars or shall be imprisoned in the county jail for not more than one year, or both such fine and imprisonment in the discretion of the court."

It is admitted that the Arizona Piano Company had not at the time of this transaction been authorized by the Michigan securities commission to sell its stock in Michigan. Under the provisions of the commission act it was a foreign investment company. It could not lawfully sell its stock without being authorized so to do by the commission. Under the evidence in the case it was selling its stock not only to plaintiff but also to many others. It was engaged in the business of disposing of its stock by continued and successive transactions. The sale, and it was a sale as we have seen, of its stock to plaintiff and others was in violation of the act and submitted all connected therewith as vendors to the penalties for its violation. The sale of stock without approval by a public board or commission was not bad at common law, is not *malum in se*, but by the terms of the act it is *malum prohibitum*. The act in question was passed under the police powers of the State (see *Merrick* v. *Halsey & Co.*, 242 U. S. 568 [37 Sup. Ct. Rep. 227]), to prevent fraud in the

sale of stocks, and to safeguard the public from exploitation at the hands of the promoter. It was passed to protect and for the benefit of the purchaser. It laid penalties upon the seller, not upon the buyer. As remarked by Lord Mansfield in *Browning* v. *Morris,* 2 Cowp. 790:

"And it is very material that the statute itself, by the distinction it makes, has marked the criminal; for the penalties are all on one side."

And as we have shown under (2) the sale by an owner of his own stock, except by continued and successive transactions, does not offend the act. The plaintiff therefore violated no law when he sold and transferred his own stock to the Arizona Piano Company, was not *in pari delicto,* and, as we shall presently see, he supposed defendants were proceeding in a regular and legal manner, and such acts as were done by him were done at the request of the defendants, or some of them.

This sale to plaintiff of the stock of the Arizona Piano Company was in conflict with the terms of a penal statute, *malum prohibitum,* and void, although not expressly declared so to be by the statute. *Loranger* v. *Jardine,* 56 Mich. 518; *Niagara Falls Brewing Co.* v. *Wall,* 98 Mich. 158; *In re Reidy's Estate,* 164 Mich. 167; *Ferle* v. *City of Lansing,* 189 Mich. 501 (L. R. A. 1917C, 1096) ; *Cashin* v. *Pliter,* 168 Mich. 386 (Ann. Cas. 1913C, 697) ; *Maurer* v. *Greening Nursery Co.,* 199 Mich. 522.

Some of these cases are so recent and they so fully consider the authorities and the principles involved that we forego further discussion of the subject. When plaintiff's stock in the Arizona Piano Company, received on this void contract, was tendered back he was entitled to the stocks he had assigned in payment therefor. The transaction had been rescinded, and upon its rescission he was entitled to be restored to

what he had parted with. Failure to restore to him what he had parted with entitled him to its value.

5. After this suit was instituted the plaintiff executed a proxy to defendant Ioor for the annual meeting of the Arizona Piano Company. We discover nothing in this to estop plaintiff from pursuing this remedy. The stock upon the books of the company stood in his name; he through his attorney had tendered it back to Mr. Ioor. By executing this proxy Mr. Ioor was permitted to vote this stock as he desired. A dividend partly in stock and partly in cash was paid after the suit was brought. Plaintiff's counsel offered that this might be offset against plaintiff's claim. There is no evidence in the case that any of the acts of plaintiff led defendants to take any steps or do any act in reliance thereon. Mr. Edward lived at Sault Ste. Marie, and the defendants were in Grand Rapids. It is quite doubtful upon this record if plaintiff personally fully understood the workings of these corporations until he came to Grand Rapids for the trial. He testified that he supposed that the transactions were all legal, that they were legally transacting the business. The letters written him gave no hint otherwise. We discover no estoppel as matter of law.

6. As we have already stated, this case is brought to recover upon the rescission of a contract, made, so far as defendants are concerned, in violation of the terms of a penal statute. It is in no way analogous to a proceeding instituted by a stockholder for mismanagement of company affairs, which should be in equity. Plaintiff has sought the proper forum.

When the representative of plaintiff's counsel tendered back the stock of the Arizona Piano Company he demanded the amount of money invested in the original stocks. This plaintiff was not entitled to. Plaintiff was entitled to what he had paid on the void contract, which payment was made in stock. He was

therefore entitled to the return of the stocks. But the contract was void and no demand under the circumstances necessary. Defendant Ioor by the language attributed to him plainly indicated that his refusal to accept the tendered stock was in no way based on the form of the demand. Had defendants returned to plaintiff the stocks he was entitled to, his claim would have been satisfied and extinguished; not having done so he is entitled to their value.

The defendants appeared by separate counsel and upon the argument it was strenuously urged that there was no liability as to some of them. But the record discloses they were engaged in a common enterprise, in consummating a transaction in face of, and contrary to, the terms of a penal statute. Under such circumstances we cannot say as matter of law that any of them should be exonerated from liability.

For the reasons stated the judgment is reversed and a new trial ordered. Plaintiff will recover his costs in this court.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, STONE, and KUHN, JJ., concurred.