THOMPSON *v.* CAIN.

1. CONTRACTS—SALES IN VIOLATION OF "BLUE SKY LAW"—RESCIS-
SION—TENDER—DIRECTED VERDICT.

In an action for money paid for corporate stock sold in
violation of the "blue sky law" (3 Comp. Laws 1915, §
11945 *et seq.*), it cannot be said that the trial court was
in error in refusing to direct a verdict for defendant on
the ground that no tender or offer to place defendant
*in statu quo* had been made before action was commenced,
where there was some evidence of a tender, although the
record in regard thereto is somewhat uncertain.

2. SAME—EVIDENCE—SUFFICIENCY—DIRECTED VERDICT.

Where there was evidence that some of the money was
paid directly to defendant, he was not entitled to a directed
verdict on the ground that he was not active in the
transaction, and was not benefited thereby.

3. SAME—MISDEMEANOR—PRINCIPALS—ONE WHO PARTICIPATES IN
MAKING SALE IS LIABLE FOR MONEY PAID.

Since a sale of corporate stock in violation of the "blue
sky law" is made a misdemeanor, and all aiding and
assisting in the commission of a misdemeanor are prin-
cipals, one who actively aided and assisted in making a
sale in violation of said statute is liable in an action for
the money paid whether he profited by the sale or not.

Error to Kent; McDonald (John S.), J. Submitted
January 15, 1924. (Docket No. 65.) Decided April
10, 1924.

Assumpsit by Anna S. Thompson, administratrix of
the estate of John Thompson, deceased, against Harry
L. Cain for money paid on an illegal sale of stock.
Judgment for defendant. Plaintiff brings error. Re-
versed.

On validity of blue sky laws, see notes in 15 A. L. R. 262;
24 A. L. R. 523.

*Charles G. Turner* and *James T. McAllister,* for appellant.

*John J. McKenna* (*Harry E. Rodgers,* of counsel), for appellee.

FELLOWS, J. This action was originally brought by John Thompson in his lifetime and revived before trial by his administratrix who is his widow. There is an irreconcilable conflict in the testimony as to substantially every material fact. Briefly stated, it is the claim of plaintiff that she and her husband each invested $3,000 in lots of the Calcasieu Sulphur & Oil company and stock of the Calcasieu Drilling Company whose properties were located in Louisiana, neither of which companies had complied with the provisions of Act No. 46, Pub. Acts 1915 (3 Comp. Laws 1915, § 11945 *et seq.*), commonly called the "blue sky law," and that defendant Cain was the person who actively conducted the sale. While there were allegations of fraud in the declaration, plaintiff predicated her claim of liability of defendant on the fact that the sale was in violation of the act above referred to. Defendant insisted, on the other hand, that he was not active in procuring the sale; that all he did was to drive the agents of the company to plaintiff's farm and introduce them to plaintiff and her husband, and that the sale was actually made by agents of the company named Raymond and Thompson. He claims that he had invested $4,500 in the proposition, that he honestly believed that it was a meritorious one, and that his acts and conduct throughout were all in good faith; that he received no commission on the sale of the stock and was in no way the agent of the companies or connected with the agents Raymond and Thompson in the sale to Thompson and his wife. The case was submitted to the jury, resulting in a verdict for defend-

ant.    The errors here assigned revolve around the refusal to charge and the charge as given.          .

Before taking up plaintiff's assignments of error we should consider the claim of defendant's counsel that upon the record there should have been a directed. verdict for defendant pursuant to his requests.    The point most strenuously urged on the argument was that before bringing suit no tender or offer to place defendant *in statu quo* had been made.    See *Joslin* v. *Noret*, 224 Mich. 240, where this question is fully discussed.    While the plaintiff on cross-examination testified that she and her husband had not deeded the land away and that the title still stood in their name, she also testified on redirect-examination that she made arrangements with her attorney for a tender of the deeds and stock to Mr. Cain, and that he (Cain) testified on a former trial that a deed of this property and the stock had been tendered to him by a Mr. Cowan.    But her testimony was further complicated by her saying that she thought Mr. Cain testified that it was a deed for land in Lake county.    There is no real good reason why the record should have been left in this uncertain shape.    If a tender had in fact been made it could have been definitely proven; but we can not upon this record say that there was no evidence of a tender.    We can not determine the question discussed by defendant's counsel as to the extent of defendant's liability as there is evidence in the case that some of the money was paid directly to defendant, and the record therefore does not present a case for a directed verdict on this question.

Numerous requests were presented by plaintiff's counsel and numerous errors are assigned on the charge as given.    We quote some excerpts from the charge which will show the theory upon which the case was submitted to the jury:

"Merely aiding or assisting Thompson and Raymond

in the sale of the stock would not of itself make him liable. I mention that because of something that was said to you by some of counsel. Merely aiding or assisting in the sale of this stock under the circumstances, would not of itself make Mr. Cain liable.

"It is the law when parties engage in a common enterprise in consummating a transaction contrary to the provisions of a penal statute, they are jointly and severally liable for any damages sustained, if they are working in a common enterprise, or with a common design or purpose.

"By common enterprise, as applied to this case, I mean that it must appear that Cain had a common interest with Thompson and Raymond to the extent that it was of the same nature and that he was to share with them in the profits of the transaction, which was the sale of stock in this case. I mean an enterprise participated in by the defendant Cain and by the salesmen, Raymond and Thompson, in the sale of this property to the plaintiffs for personal or financial profit to all of those engaged in the enterprise, including the defendant Cain.

"If you find that the defendant, Harry L. Cain, did whatever he may have done or said whatever he may have said to the plaintiff, Thompson, merely out of whatever interest he may have in the proposition as a purchaser or owner of a share in the property of these two companies, with no ulterior motive or profit to himself, other than as an investor in the property, then he would not be a party to a common enterprise as I have used that term in my instructions to you. * * *

"Before you can find the defendant, Harry L. Cain, was engaged in a common enterprise with Raymond and Thompson, or anyone else, you must find that his interest in that enterprise was of the same nature and came from the same source as the interest of Raymond and Thompson."

We are persuaded that these instructions incorrectly limited the liability of the defendant for participating, if he did participate, in a sale of stock in the face of and in violation of a penal statute. The action is not one for fraud but is based on the theory that the

sale is in violation of a penal statute and therefore void. A violation of the statute is made a misdemeanor (3 Comp. Laws 1915, § 11967). All aiding and assisting in the commission of a misdemeanor are principals. *People* v. *Rice,* 103 Mich. 350; *People* v. *Barnes,* 113 Mich. 213; *People* v. *Wright,* 90 Mich. 362; 16 C. J. p. 120. Hence if the defendant actively aided and assisted the agents Raymond and Thompson in making the sale, he violated the blue sky law whether he profited by the sale or not. In *Edward* v. *Ioor,* 205 Mich. 617 (15 A. L. R. 256), we had before us the question of liability for a sale in violation of this statute. We there said:

"The sale, and it was a sale as we have seen, of its stock to plaintiff and others was in violation of the act and submitted all connected therewith as vendors to the penalties for its violation. * * *

"The defendants appeared by separate counsel and upon the argument it was strenuously urged that there was no liability as to some of them. But the record discloses they were engaged in a common enterprise, in consummating a transaction in face of, and contrary to, the terms of a penal statute. Under such circumstances we cannot say as matter of law that any of them should be exonerated from liability."

In that case the interest of the defendants varied. But they were all engaged in a common enterprise and an unlawful one, and the common enterprise was the sale of unapproved stock. So here, if the defendant aided and assisted Raymond and Thompson in the sale of this stock to plaintiff and her husband, they were engaged in a common enterprise and an unlawful one. The common enterprise, let us emphasize, was the sale of the stock and how the proceeds were to be divided if they were to be divided at all was not controlling, nor were their pre-arrangements or interest important.

These instructions and others of similar purport went to the heart of the case. They unduly limited

defendant's liability.    They sent the case to the jury on an erroneous theory of the law.

The judgment will be reversed and a new trial granted, with costs to plaintiff.

CLARK, C. J., and SHARPE, MOORE, STEERE, and WIEST, JJ., concurred.    MCDONALD and BIRD, JJ., did not sit.