Argued June 10; affirmed July 8; rehearing denied
September 14, 1932

# SALO *v.* NORTHERN SAVINGS & LOAN
## .ASS'N ET AL.
### (12 P. (2d) 765)

*Burton E. Palmer,* of Portland (R. M. Burley and R. F. Hollister, both of Portland, on the brief), for appellants A. A. Asbahr and Service Finance Corporation.

*T. B. Handley,* of Portland, for appellant Northern Savings & Loan Association.

*E. E. Heckbert* and *Leon W. Behrman,* both of Portland (C. W. Kirk, of Portland, on the brief), for respondent.

BELT, J. This is an action to recover money under a contract to purchase stock alleged to have been paid as a result of a fraudulent scheme and conspiracy by the defendants. In January, 1927, Charles N. Falconer, a coal miner 55 years of age, invested $8,000 in the defendant Northern Savings & Loan Association, of which the defendant A. A. Asbahr was president. Two certificates, each for forty shares, were issued to Falconer wherein it was guaranteed that a cash dividend at the rate of 7 per cent per annum would be paid on January 1 and July 1 of each year. It was also provided that after one year from date thereof, and upon thirty days written notice, Falconer had the right of withdrawal and the association would, in the event of the exercise of such right, pay the full face value of the certificates. On June 1, 1928, Falconer made due application to withdraw his money from the association, but, instead of being paid, it is alleged that he was induced through fraudulent representations to apply $7,000 of the amount due him to the purchase of seventy shares of stock in the defendant Service Finance Corporation, of which the defendant A. A. Asbahr was also president.

The charge of fraud is predicated upon the following representations: "That said Northern Savings & Loan Association was going to reduce its interest rate from 7 per cent which it was then paying to 6 per cent; that if the plaintiff would put said moneys into said Service Finance Corporation, the said Service Finance Corporation would pay the plaintiff 8 per cent on said moneys; that the same would be secured and guaranteed precisely as in said Northern Savings & Loan Association; that said Service Finance Corporation was a strong financial institution and a prosperous and solvent concern, and that it was making large profits;

that the plaintiff's said moneys would be just as safe and secure in said Service Finance Corporation as in said Northern Savings & Loan Association, and that the plaintiff would have just the same withdrawal privileges in said Service Finance Corporation as he had in said Northern Savings Loan Association, and that said Service Finance Corporation would pay to the plaintiff interest thereon at the rate of 8 per cent per annum payable semi-annually, and that the plaintiff could withdraw the said sum of money at any time after the expiration of one year therefrom, together with said interest.''

It is also alleged in the complaint that at the time of the purchase of the seventy shares of stock in July, 1928, the Service Finance Corporation did not, as required by the ''Blue Sky Law'' of Oregon, have any license to sell such stock. Plaintiff further avers that at the expiration of one year from date of purchase of the stock he notified the Service Finance Corporation of his desire to withdraw the money, but that it failed and refused to pay him any part thereof.

Defendants in their answer deny the charge of fraud and failure to have a permit or license to sell such stock, but on trial it was stipulated that its license ''authorizing the sale of stock of said corporation expired on September 1, 1927.'' It is their contention that it was not necessary for the Service Corporation to have a license to sell this particular stock to the plaintiff, as it was only acting as agent for I. W. Sather, the owner of the stock.

Falconer and defendant Asbahr were the only witnesses who testified, and, at the conclusion of the testimony, the court, on motion of plaintiff, directed the verdict against the three defendants for the sum of

$7,000, together with interest thereon at 8 per cent per annum from January 10, 1931. Defendants appeal.

■ There is a conflict in the testimony relative to the alleged fraudulent representations, hence the direction of this verdict can only be sustained, if at all, by reason of the fact that the Service Corporation was not authorized to sell the stock in question and that Asbahr, as chief executive officer of both corporations, induced Falconer to purchase stock in the Security Finance Corporation when at such time he knew that it did not have a permit or license to sell the same. It is plain that if a license was required to sell such stock the failure to have it would invalidate the contract of sale, and the purchaser would be entitled to recover the money paid. The sale of stock under such circumstances would be fraudulent and illegal: *Pennicard v. Coe,* 124 Or. 423 (263 Pac. 920); *Moe v. Coe,* 124 Or. 436 (263 Pac. 925).

■ Under the law at the time the sale of stock was made to plaintiff (General Laws of Oregon for 1921, ch. 400, sec. 1), the Security Finance Corporation would not have been obliged to have secured a license if the sale was made by them while acting as an agent "exclusively for such owners," and such sale "not being in the course of repeated or continuing transactions of a similar nature." Assuming, as we must do, that the defendant corporation did not own the stock, it affirmatively appears that it was not acting as the exclusive agent of the owner. Previous to this sale, it had sold numerous shares of stock after having secured a license to make such sales. In the application of the statute, and having in mind the purpose of its enactment, namely the protection of the public against the sale of worthless stocks and securities, it is proper to take into consideration the course of dealing of the

corporation with the public. In the light of the undisputed testimony, this is not a case of a corporation acting as an exclusive agent in an isolated sale of stock. We hold that the company was a "dealer" within the meaning of the statute, and that it was incumbent upon it to have secured a license to make the sale in question.

It is asserted that the proceeds from the sale of this stock were applied in partial satisfaction of Sather's note of $10,000 to the Service Corporation. The note, however, was not offered in evidence. Neither is the record clear as to how this alleged indebtedness arose. Witness the uncertain and evasive testimony of Asbahr in reference thereto: "Q. The Service Finance Corporation made a loan to him? A. Yes, sir. Q. And they took his certificates as collateral to the loan? A. Yes, sir. * * * Q. How much did you loan him? A. I think it was ten thousand dollars; approximately that. Q. I don't quite understand. Do you mean that he hadn't paid for this stock, or what? A. Yes, sir, the stock was paid for. Q. He had paid in full ten thousand dollars, is that the idea? A. Yes, sir, he settled for the stock. Q. In money? A. I don't know right now. Q. You don't know. A. No, sir. Q. Anyhow, he wanted to borrow some money on the certificate? A. I don't know whether that was the exact way the transaction was handled or not, or whether he gave us a certificate as collateral, to be resold, to apply on his note. Q. Well now, let's get it right. Have you got the note here? A. No, sir, I have not. Q. Well, you testified on direct examination, as I understood you * * * I understood you to say that on this certificate for ten thousand dollars you made to Mr. Sather a loan, that the Service Finance Corporation made a loan. A. I can't tell you. * * * Q. Well, I understood you to say that the Service Finance Corporation loaned Mr.

Sather some money on this trasaction. A. No, I don't think I said that. I think I simply said we loaned him some money. * * * Q. You loaned him ten thousand dollars in money? A. Yes, sir. Q. On what? A. That I don't remember now.''

The stock book shows that on July 7, 1926, one hundred shares were issued to R. I. Thornton and, on April 17, 1927, Thornton assigned and transferred this stock to I. W. Sather. What did Thornton pay for the stock? Was it issued to him for valuable services performed, or to be performed? Was the note of Sather to the corporation given in payment of stock, or was it security for a loan? The record is very clouded concerning the character of these transactions, and the president's memory in reference thereto is as shady as the Service Corporation which he represents. Attention is directed to this phase of the case merely for the purpose of showing the fraudulent transactions, in which the plaintiff was given seventy shares of worthless stock in lieu of hard earned money. Thus it was that the Northern Savings & Loan Association undertook to relieve itself from liability when the plaintiff sought to withdraw his money. Whether the $7,000 was actually transferred from the loan association to the Security Corporation is a question upon which reasonable minds might well differ. There is no uncertainty, however, concerning one thing in this record, and that is that Falconer through concerted action of the defendants was made the victim of a crooked deal. It is his time to win, although the fruits of victory will go to his estate.

■ Having held that the contract of sale was void by reason of the failure of the defendant Security Corporation to have obtained a license to sell such stock, it

follows that all who participated in bringing about the consummation of such sale are liable for the damages resulting from such unlawful act. In *Thompson v. Cain* 226 Mich. 609 (198 N. W. 249), a case involving the sale of unapproved stock, it was held that all who participated in such unlawful enterprise were subject to liability. Also see *Edward v. Ioor,* 205 Mich. 617 (172 N. W. 620, 15 A. L. R. 256).

In the instant case, it is admitted that the defendant Asbahr urged Falconer to purchase this stock. The stock could not have been sold if the two corporations had not aided and assisted their president in the transaction. It follows that the judgment based upon the directed verdict in favor of plaintiff and against the three defendants is affirmed, with the modification that interest be awarded from January 10, 1931, at the rate of 6 per cent per annum, instead of 8 per cent.

BEAN C. J., BROWN and ROSSMAN, JJ., concur.