Argued May 24; affirmed June 13, 1944

# UNION LAND ASSOCIATES *v.* USSHER
### (149 P. (2d) 568)

Before BAILEY, Chief Justice, and BELT, KELLY, LUSK and HAY, Associate Justices.

*P. W. Cookingham,* of Portland (Cookingham & Hanley, of Portland, on the brief), for respondent.

*W. B. Murray,* of Portland, for appellant.

BELT, J. On April 5, 1943, the plaintiff corporation, engaged among other things in the business of selling oyster beds, sold to the defendant for $2,000, ten oyster beds, described as follows:

> "Comprising one and one-quarter acres more or less, situated in the form of a square in the southeasterly quarter of Lot No. 23, Biggs Cove Oyster Claims, according to the duly recorded plat of oyster claims in Tillamook County, Oregon."

Pursuant to the written contract of sale, a note in the sum of $500 was executed by defendant in favor of the plaintiff as part payment.

This action was commenced by plaintiff to recover upon the note. Defendant admits the execution of the note and that no part thereof has been paid. As an affirmative defense the defendant alleges in substance that the sale of these oyster beds was an "investment arrangement and a security within the meaning of the

Oregon Securities Statutes", and that, at the time of such transaction, plaintiff had no license from the Corporation Commissioner of the State of Oregon to sell securities. It is also alleged that plaintiff has been engaged in dealing with the public generally in repeated similar transactions.

In keeping with his theory that the transaction is within the purview of the Oregon Securities Law (§§ 80-101—80-131 inclusive O. C. L. A.), the defendant further alleges that, at the time he entered into the contract to purchase the oyster beds, the plaintiff "informed" him that "he could become a member of either the Oyster Growers Cooperative or the Coos Bay Farmers Cooperative, which cooperatives were each in the business of marketing oysters for their own members on a cooperative basis, or that defendant could harvest and market said oysters himself or hire another to do the harvesting and marketing for him, and defendant was informed by the plaintiff that he could become a member of Coos Bay Association in accordance with the provisions of Exhibit 'C' attached hereto and made a part hereof, and pursuant to said information and representation, the defendant did enter into an agreement with Coos Bay Association as indicated in Exhibit 'C', attached hereto and by reference made a part hereof, and did enter into a marketing agreement with Oyster Growers Cooperative in accordance with the provisions of Exhibit 'B', attached hereto and by reference made a part hereof." It is further alleged that, on May 8, 1943, defendant entered into an agreement with the Oyster Growers Cooperative and that the agreement with the Coos Bay Association was made by him on May 10, 1943, but that "there is no financial connection between the aforesaid corporations, con-

tract, or understanding, and that the officers of said corporations are distinct groups and do not manage or have any authority to direct the operations of any of the other aforesaid corporations, but, nevertheless, that when said transactions are considered together it constitutes an investment arrangement and a security within the meaning of the Oregon Securities Statutes of the State of Oregon, and, therefore, said promissory note was executed for an illegal consideration and void."

A general demurrer to the affirmative defense was sustained and, upon refusal of the defendant further to plead, judgment was entered in favor of plaintiff in accordance with the prayer of its complaint. Defendant appeals.

The issue of law raised by the demurrer is whether the sale in question is governed by the Oregon Securities Law, otherwise known as the "Blue Sky Law". If the transaction is within the purview of such act, plaintiff can not recover on the note, since it is admitted that it had no license to sell securities: *Salo v. Northern Savings and Loan Ass'n*, 140 Or. 351, 12 P. (2d) 765; *Downs v. National Share Corp.*, 152 Or. 546, 55 P. (2d) 27.

It affirmatively appears from the answer that plaintiff was not a party to nor did it have anything to do with the agreement had by defendant with the Oyster Growers Cooperative Association to market or sell the oysters, or with the Coos Bay Association to cultivate and harvest them. The mere fact that plaintiff "informed" defendant or "represented" to him that he could become a member of such association does not make such agreements material in this case and neither of them has any relation to or bearing upon the con-

tract of purchase. There is no charge that plaintiff fraudulently induced defendant to become a member of such cooperative association.

■ We can not, as urged by defendant, consider the contract of sale and the two cooperative agreements as one transaction. We think they were separate and distinct. When plaintiff sold the oyster beds, defendant was under no obligation to become a member of the associations, or either of them. Whether he desired to use these associations for the purpose of cultivating, harvesting and sale of his oysters on a cooperative basis was strictly a matter for his determination and one in which plaintiff had no concern.

■ Eliminating these cooperative agreements from consideration we have then the simple transaction wherein plaintiff sold and assigned its interests in the oyster plantations to defendant for an agreed price, part of which is represented by the note in question. Is such transaction governed by the Blue Sky Law? We think it is not.

■■ The Blue Sky Law was enacted for the protection of the public and, to effectuate such purpose, it should be liberally construed. *New Amsterdam Casualty Co. v. Hyde,* 148 Or. 229, 34 P. (2d) 930, 35 P. (2d) 980; *State v. Whiteaker,* 118 Or. 656, 247 P. 1077; *Moe v. Coe,* 124 Or. 436, 263 P. 925. It was not intended, however, to regulate every commercial transaction or investment. Neither is it within the purview of the act to control the sale of all securities: *State v. Whiteaker,* supra; 37 C. J. 275, Licenses § 168. Section 80-103, O. C. L. A., as amended by Ch. 148, Laws of Oregon for 1941, specifically provides that the Blue Sky Law shall have no application to certain designated classes of securities.

Section 80-102, O. C. L. A., provides that the term "security" shall include "any note; stock * * * * certificate of interest or participation in any profit-sharing agreement; * * * * investment contract * * * * *." The act fails, however, to define "investment contract" but in other jurisdictions the term "investment contract", as used in a "blue sky law", has been defined as a contract providing for the investment of capital in a way intending to secure income or profit from its employment: 47 Am. Jur. 475, Securities Acts § 16.

In the instant case there was no sale of any security or "investment contract" within the meaning of the act. There was no obligation on the part of the plaintiff vendor to do anything under the contract other than deliver the deed upon payment of the purchase price. Neither was the contract of purchase connected with any promotion scheme involving the sharing of expected profits to be made through the efforts of the seller. Here the vendor had nothing whatever to do with the cultivation, harvesting, or sale of the oysters: *Lewis v. Creasey Corporation*, 198 Ky. 409, 248 S. W. 1046; *Busch v. Noerenberg*, 202 Minn. 290, 278 N. W. 34; *Caskie v. State Corporation Commission*, 145 Va. 459, 134 S. E. 583.

There is no case cited by appellant supporting the contention that the transaction in question constitutes a sale of a security or investment contract within the meaning of the Blue Sky Law. *State v. Agey*, 171 N. C. 831, 88 S. E. 726 is illustrative of the authorities upon which appellant relies. In that case defendant was convicted under the Blue Sky Law of North Carolina of the charge of selling certain tracts of land for fig orchards without first having obtained a license so to

do from the Insurance Commissioner. In the contract of sale, defendant's employer, the vendor, agreed with the purchaser to ''scientifically develop, cultivate, prune, and take care of said orchard plot or plots for five years, and, upon completion of the payments as above set forth to make, execute, and deliver to the purchaser hereof a general warranty deed for the number of plots mentioned above, which shall have at that time 200 living trees thereon.'' And ''The company guarantees the purchaser hereof 3 cents per pound for all fruit grown on said trees delivered at the preserving plant in good condition.'' The court held that the transaction was within the scope of the Securities Act as it involved the sale of an investment contract. The seller held out as an inducement the participation by the buyer in expected profits to be realized from the efforts of the seller. Obviously, this case is based upon a factual situation entirely different from the one before us.

In *State v. Evans*, 154 Minn. 95, 191 N. W. 425, 27 A. L. R. 1165, the defendant was indicted for selling an investment contract without a license. The judgment of conviction was sustained, the court thus quoting from *State v. Gopher Tire & Rubber Co.*, 146 Minn. 52, 177 N. W. 937:

> ''The placing of capital or laying out of money in a way intended to secure income or profit from its employment is an 'investment' as that word is commonly used and understood.''

The contract in the case cited by appellant has no resemblance to the simple contract of purchase in the instant cause. As to what constitutes ''securities'' or ''investment contracts'' within the meaning of a Blue Sky Law, see cases in note 54 A. L. R. 503.

■■ It is also urged that the note is without consideration in that the interests of the plaintiff in the oyster beds acquired from the state were of a personal nature and not capable of being sold or assigned. The extent and nature of plaintiff's rights in these oyster plantations is an interesting and important question. Tillamook bay is a navigable body of water—an arm of the sea—the title to the land below ordinary high water mark being vested in the State of Oregon. That the state in the exercise of its sovereign power has the right to control and regulate fishery is well established. Oysters are shell fish, the cultivation and taking of which undoubtedly are subject to regulation by the state through its administrative agency. In the instant case, it is well to bear in mind that we are not dealing with the sale of natural oyster beds but of oyster bed plantations.

In 36 C. J. S. 843, Fish § 11, it is said:

"Oysters and clams, which are planted at places where they do not naturally grow, and where no oysters or clams are growing at the time, and the location of which is marked by posts or otherwise, are the subjects of private ownership, and are the property of the person who plants them, * * * *."

In 22 Am. Jur. 670, Fish and Fisheries § 5, we find that:

"In their natural state, clams and oysters are classified as ferae naturae, and their ownership is vested in the state in its sovereign capacity, but where planted where they do not naturally grow, in locations marked by posts or otherwise, they partake rather of the nature of ferae domitae and are the subjects of private ownership; although their owner has no greater actual possession than is evidenced by their planting and staking. In the latter case,

they may be the subject of larceny; and if one injures or converts such shellfish, he is liable to respond in damages. The fact that the soil is in the state, and that the people have a common right of fishery in the waters where his shellfish are planted, do not destroy the planter's right of ownership.''

Of course, the extent and nature of the rights acquired by the location of the oyster beds depends upon the legislative will, as manifested by the act authorizing it. It is important therefore to consider well the language of statutory enactments from other jurisdictions before relying upon decisions based upon the same. Thus we find in some states such oyster location grants being called leases while in other states they are referred to as mere licenses revocable at the will of the state.

Section 83-812, O. C. L. A., provides:

''All of the waters of Tillamook bay in Tillamook county lying west of the old ship channel are hereby designated and set apart for artificial plantations of oysters, and it shall be lawful for any citizen of this state to take oyster spat or shells to establish and maintain oyster beds in said waters; provided, that said oyster beds shall not exceed 50 acres in any one plantation; provided further, that each bed shall be distinctly marked out by means which shall not obstruct navigation, and any person desiring to establish and hold any such oyster bed in the waters of Tillamook bay shall file with the county clerk of Tillamook county a description of the tract or bed which he proposes to establish and maintain, with a statement of his intention to establish the same, signed and acknowledged by him, and shall, within 30 days from the time of such filing, distinctly mark out said oyster bed so as to indicate the boundaries thereof and maintain the same so long as such oyster bed shall be maintained, and he

shall within two years from the date of the filing of such statement with the county clerk, cause said oyster bed to be planted with oysters and shall thereafter cultivate and maintain the same continuously, and if he shall neglect so to do for a period of two years at any one time, or to keep the boundaries thereof distinctly marked, all his right, title and interest in and to the same shall cease and determine; * * * * * *."

Section 83-816, O. C. L. A. (Ch. 447, Laws of Oregon for 1939), provides that:

"Sales, leases, assignments, conveyances, relinquishments and other transfers of said oyster plantations and claims, or parts thereof, may be made by reference to said plat so filed."

■ It is certain that the state has never intended to part with title to the bed of Tillamook bay which, as said before, is a navigable body of water. Defendant did not acquire any fee simple title to the land. He was merely granted, subject to the paramount right of navigation, the right to the use of the land for a specific purpose in keeping with the provisions of the statute. The rights acquired, however, constitute an interest in real property. There is no statutory provision in this state, as in some jurisdictions, which prohibits the assignment of such rights without the consent of the state.

■ Finally, defendant asserts—but we think not seriously—that the act in question is unconstitutional. However, since that defense is not pleaded, the question is not before the court for decision: *State ex rel. v. Franklin,* 163 Or. 500, 98 P. (2d) 724.

Judgment is affirmed.