Argued June 6, affirmed September 13, 1977

FOELKER, *Respondent,*
*v.*
KWAKE et ux, *Appellants.*
(TC 74-2626, SC 24649)
568 P2d 1369

Lawrence F. Cooley, Eugene, argued the cause and filed a brief for appellants.

Thomas L. Fagan, of Barnhart, Fagan & Hoffman, Springfield, argued the cause and filed the brief for respondent.

TONGUE, J.

**TONGUE, J.**

This is an action for fraud under the Oregon Securities Law, ORS 59.115(1)(b). The case was tried before the court, sitting without a jury. Defendants appeal from a judgment for plaintiff in the sum of $9,162.65.[1] We affirm.

1. *The transaction between the parties constituted the "sale" of a "security."*

■ Defendants' principal contention is that the trial court erred in finding that a promissory note to plaintiff for $6,000 was a "security" and in failing to find that the "overall transaction" was "not an 'investment contract.'" Because this is an appeal from a judgment in favor of plaintiff in an action at law we must affirm if there was any competent evidence to support the findings and judgment of the trial court and plaintiff is entitled to the benefit of all favorable evidence and all reasonable inferences from such evidence.[2]

Defendant Paul Kwake was president of Verde Enterprises, Inc., an Oregon corporation engaged in the sale of restaurant equipment and supplies. His wife, defendant Nancy Kwake, was Secretary-Treasurer of the corporation, but took no active part in its business.

In June 1972 plaintiff, in response to a newspaper advertisement "looking for an investor," met with defendant Paul Kwake. Plaintiff testified that Paul Kwake told him that "he was going to start * * * another corporation, * * * called Indigo * * * [and] needed some * * * investors to put [up] some money * * * to get it going."

According to plaintiff, an oral agreement was then

---

[1]The original defendants included Paul Kwake, Nancy Kwake and Stanley Kwake. By stipulation the complaint was dismissed as to defendant Stanley Kwake.

[2]*See Cronn v. Fisher,* 245 Or 407, 416, 422 P2d 276 (1966).

made under which he was to get a 50% interest in Indigo plus a 20% to 25% interest in Verde in return for an investment by him of $15,000, of which $6,000 was to be paid at that time and an additional $9,000 on November 1, 1972.

It appears that a proposed written contract (not offered in evidence) was then prepared, but was not signed by plaintiff. Plaintiff did, however, pay $6,000 to defendant Paul Kwake and took back a promissory note (also not offered in evidence), together with an "inventory loan and security agreement" as security for the note. Plaintiff testified, however, that this $6,000 was "not a loan," but that "it was an investment" and that he was to "get a part of both corporations," although stating that the transaction was handled in this manner so as to give him "the option to back out if he wanted to" and "be paid my money back with interest." Defendant Paul Kwake denied most of the foregoing testimony.[3]

Upon payment of the $6,000 on June 13, 1972, plaintiff also started working as an employee of Verde for a weekly salary, but not in return for a share in the profits, according to his testimony. After three or four weeks Verde apparently ceased operations due to financial difficulties. Plaintiff then filed suit to "foreclose on the note" and obtained a judgment against Verde that was apparently ununcollectible upon Verde's discharge in bankruptcy.[4] This action was then filed by plaintiff.

■ The trial court stated in a memorandum opinion that the issue for decision was "whether the promissory note is a 'security' * * * or merely an isolated 'loan.'" Defendants contend that its decision was not

---

[3] Plaintiff also testified that "it was even a trial thing" and that at the end of that time, in November, it was also for defendant Paul Kwake "to decide if he wanted me as a partner."

[4] Plaintiff's complaint to collect the note alleged that his payment of $6,000 to Verde was a "loan," but plaintiff testified that this allegation was "not true" and that it was "an investment" to get "part of both corporations."

in conformity with the pleadings and "should be disregarded" because "the issue before the Court [under the pleadings] was whether or not the overall agreement was an 'investment contract' and not whether the promissory note was a 'security'."

Later, however, the trial court made the following finding of fact:

"* * * these transactions, including the issuance of a corporate note to the Plaintiff, constituted the sale of a security to the Plaintiff."

It also appears to us that the allegations of the Complaint do not confine the issue to the note, but are sufficiently broad so as to support such a finding of fact. Such findings of fact supersede previous expressions of opinion by a trial judge. *Montgomery v. Wadsworth Plumbing & Heating Co.,* 278 Or 455, 460, 564 P2d 703 (1977).

In their brief on this appeal defendants describe the transaction as follows:

"A loan of $6,000.00 was made and an agreement was entered into whereby *the Plaintiff received basically an option to buy shares in the corporation* after he had made an investigation of the corporation. There was no agreement to share in the profits and no agreement to purchase stock. *Basically there was a loan and an option* which does not meet the test of an 'investment contract.' " (Emphasis added.)

Defendants further contend that:

"Basically, the $6,000.00 received by the Defendant was in the form of a loan and Plaintiff was to receive interest income from the lending thereof. *The existence of an option* to purchase shares in the corporation *is a completely separate transaction* and did not cause the overall transaction to become an 'investment contract.' " (Emphasis added.)

While this transaction may not satisfy all of the usual requirements for an enforceable option, we agree with defendants' analysis and characterization of the transaction as "basically an option to buy shares in the

corporation," at least for the purposes of the Oregon Securities Law.

■ ORS 59.015(11)(a) provides that:

" 'Sale' or 'sell' includes * * * option for the sale of * * * a security * * *."[5]

Thus, because the "shares in the corporation" were clearly "securities" a transaction under which plaintiff acquired an option to buy such securities would constitute the sale of a security within the terms of the Oregon Securities Law and, if induced by fraudulent representation, as described by ORS 59.115(1)(b), would be subject to the provisions of that section of the law.

We do not agree with defendants' contention that "the existence of [the] option to purchase shares in the corporation [was] a completely separate transaction [as in *Union Land Associates v. Ussher*, 174 Or 453, 149 P2d 568 (1944), cited by defendants] and [therefore] did not cause the overall transaction to become an 'investment contract.' "[6] We hold that there was substantial evidence to support a finding that the payment of the $6,000, the issuance of the note, and the acquisition of the option were either integral parts of a single transaction or that the transactions were so closely related so as to support the finding of fact by the trial court that "these transactions, including the issuance of a corporate note to the Plaintiff, constituted the sale of a security to the Plaintiff."

Under this view of this case we need not decide whether the promissory note for $6,000 was itself a "security," under the facts of this case.[7]

---

[5] *See also Stimmel v. Shearson, Hammill & Co., Inc.*, 411 F Supp 345 (D Or 1976).

[6] *Union Land Associates v. Ussher*, 174 Or 453, 149 P2d 568 (1944) is also distinguishable in that the note in that case was given by the "investor," and not by the corporation in exchange for funds, as in this case.

[7] For cases holding that promissory notes may be "securities" under other statutes and under the facts of such cases *see Llanos v. United States*,

We have previously held that the Oregon Securities Law is to be liberally construed so as to afford the "greatest possible protection" to the public and our previous decisions have expressly avoided "hard and fast" rules in determining what financial transactions constitute a "security" or an "investment contract."[8] We believe that the decision by the trial court that the transaction or transactions in this case constituted the sale a "security" is consistent with such decisions and is supported by substantial evidence.

## 2. *Defendants' other contentions.*

■ (a) Defendants contend that there was no evidence of either an "untrue statement of a material fact" or of an "omission to state a material fact necessary in order to make statements made not misleading," so as to provide a basis for liability under ORS 59.115(1)(b).[9]

The trial court made a finding of fact that:

> "This sale of a security was by means of an untrue statement of a material fact or by means of an omission to state material facts necessary in order to make the statements made to the Plaintiff [not] misleading in light of the circumstances under which they were made."

206 F2d 852 (9th Cir 1953), cert. denied 346 US 923 (1954); *Securities and Exchange Commission v. Vanco, Inc.,* 166 F Supp 422 (DNJ 1958), *aff'd* 283 F2d 304 (3rd Cir 1960); *Whitlow & Assoc. Ltd v. Intermountain Brokers,* 252 F Supp 943 (D Haw 1966); and *State v. Hodge* 204 Kan 98, 460 P2d 596 (1969). *See also* ORS 59.015(13)(a) stating that " 'Security' means a note * * *." But *see People v. Davanport,* 13 Cal2d 681, 91 P2d 892 (1939). *See* generally Coffey, The Economic Reality of a 'Security': Is There a More Meaningful Formula? 18 West Res. L Rev 367, 410-11 (1967).

[8] *See Bergquist v. International Realty,* 272 Or 416, 423-24, 537 P2d 553 (1975) and cases cited therein. *See also State v. Hodge,* 204 Kan 98, 460 P2d 596, 601 (1969) and Coffey, *supra* n 7.

[9] ORS 59.115(1) "Any person who: * * * (b) Offers or sells a security by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made not misleading (the buyer not knowing of the untruth or omission), and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable as provided in subsection (2) of this section to the person buying the security from him."

Upon examination of the record we find that there was evidence from which the trial court, as the trier of the facts, could properly find that defendant Paul Kwake, not only told plaintiff that the inventory was worth $15,000, but gave plaintiff the impression that the inventory belonged to Verde. While stating with reference to the inventory in the Verde store that "I have got plenty of inventory," Paul Kwake agreed that plaintiff, working with a Verde employee, would prepare an itemized inventory list, which apparently included items later claimed by Kwake to be owned personally by him. There was also testimony that Paul Kwake told plaintiff that Verde had "at least" $10,000 in accounts receivable, and named some of such accounts, but did not disclose that there were any problems in collecting such accounts, as was apparently the fact.

(b) Defendant Nancy Kwake contends that the trial court erred in finding that she was liable to plaintiff and notes that the trial judge later stated that "perhaps I was in error in allowing judgment against Nancy." That statement was made after entry of judgment and notice of appeal and was apparently based upon his observation that "the evidence did not reflect in any way her participation in any of the transactions * * *."

Under the provisions of ORS 59.115(3), however, no such personal participation need be proved to impose liability, it being sufficient that the defendant was an officer of the corporation, unless the defendant sustains the burden of proof that he or she did not and could not reasonably have had knowledge of the facts on which liability was based.[10] There was evidence in

---

[10] ORS 59.115(3) provides:

"Every person who directly or indirectly controls a seller liable under subsection (1) of this section, *every* partner, *officer,* or director of such seller, every person occupying a similar status or performing similar functions, and every person who participates or materially aids in the sale *is also liable jointly* and severally with and to the same

this case that Nancy Kwake was an officer of Verde. She testified that she did not "participate" in the business activities of Verde, but offered no evidence that she did not know or could not reasonably have known of the existence of the facts on which liability was based, as required by ORS 59.115(3).

   (c) Defendants contend that "the consideration paid for the security was $6,000, not $9,162.65, (the amount of the judgment by the trial court) and that the court did not have authority to enter a judgment for a sum larger than the measure of damages specified by the statute." ORS 59.115(2)(a) authorizes recovery for "the consideration paid for the security, and interest from the date of payment at the rate of six percent per annum." Thus, by the terms of the statute, judgment should have been limited to $6,000 with interest at six percent per annum from the date of payment on June 13, 1972.[11]

Plaintiff contends that defendants not only failed to object to the amount of the judgment at the time of trial, but filed a motion for amended judgment against

---

extent as the seller, *unless the nonseller sustains the burden of proof that he did not know, and, in the exercise of reasonable care, could not have known, of the existence of the facts on which the liability is based.* * * *." (Emphasis added.)

[11] ORS 59.115(2) provides

"The purchaser may recover, in addition to costs and reasonable attorney fees at trial and on appeal:

"(a) Upon tender of the security, the consideration paid for the security, and interest from the date of payment at the rate of six percent per annum, or at the rate provided in the security if the security is an interest-bearing obligation, less any amount received on the security;" * * *.

Defendants also contend that ORS 59.115(2)(a) "requires a tender of the security and there is no evidence or testimony that the security was tendered." As previously noted, our decision in this case is not based upon a holding that the promissory note was a security, but that the transaction constituted an option for the purchase of stock. That stock was never issued or delivered to plaintiff. Thus, no tender was possible in this case.

Defendants do not contend on this appeal, however, that "any amounts were received on the security."

[ 387 ]

defendant Paul Kwake alone (excluding defendant Nancy Kwake) in that same amount, and that as a result defendants cannot raise this objection for the first time on this appeal.

We believe, however, that this error by the trial court is so apparent on the face of the record that this is an appropriate case in which to exercise the power conferred upon this court by Article VII (Amended), Section 3 of the Oregon Constitution for application in cases in which this court "can determine what judgment should have been entered in the court below," in which event this court "shall direct such judgment to be entered."[12] Accordingly, we direct that judgment be entered in such an amount as shall represent $6,000 plus interest at six percent per annum from June 13, 1972 to the date of such judgment. Plaintiff is also entitled to a judgment for costs, but not for attorney fees in the trial court under the record in this case.[13]

■ (d) Defendants next complain that the trial court relied as a basis for its decision upon a deposition not in evidence, as shown by statements in its memorandum opinion. That opinion, while set forth in appellant's brief, is not included in the trial court file. Also, as previously stated, any statements in that memorandum are superseded by the formal findings of fact. In any event, we find upon examination of that memorandum that any points for which the trial court relied upon that deposition for support were not decisive of this case and that the findings of fact on

---

[12] *Cf. Allen v. Allen,* 275 Or 471, 482, 551 P2d 459 (1976) and cases cited therein. *Also cf.* Rule 7.19 of the Rules of Procedure of this court relating to errors which are "apparent on the face of the record."

[13] The trial court denied plaintiff's claim for attorney fees, under ORS 59.115(2), apparently because plaintiff failed to offer evidence to support such an award. No contention is made on this appeal by plaintiff, by cross-appeal or otherwise, that the trial court erred in so holding.

Defendants contend that the trial court erred in including in the judgment a statement that the judgment was rendered for "attorney's fees taxed herein." Because the trial court refused to allow plaintiff's claim for attorney fees, this assignment of error is moot.

[ 388 ]

points which are decisive of this case are supported by other competent evidence.

■ (e) Finally, defendants assign as error the overruling by the trial court of four of defendants' objections to evidence. Because these four assignments of error do not set forth verbatim any of these objections to evidence, as required by the express provisions of Rule 7.19 of the Rules of Procedure of this court, we decline to consider any of them.

For all of these reasons, the judgment of the trial court is affirmed.