Argued January 7, reversed March 11, petition for rehearing denied
April 13, 1976

WEBB, *Respondent,*
*v.*
CLARK et al, *Appellants.*

546 P2d 1078

*William B. Murray,* Portland, argued the cause and filed a brief for appellants.

*Rita Radich,* Portland, argued the cause for respondent. With her on the brief was John Toran, Jr., Portland.

HOWELL, J.

## HOWELL, J.

This is an action for fraud arising out of defendants' contract to install an electric hot water baseboard heating system in plaintiff's home. Defendants John and Viola Clark, doing business as Portland State Electric Company, appeal from a judgment entered on a jury verdict awarding general and punitive damages to the plaintiff. The facts are generally undisputed.

In December of 1969 the plaintiff contacted the defendant, John Clark, to discuss the replacement of the old oil burning furnace in plaintiff's home with a modern electric heating system.[1] Various types of systems were discussed and defendant recommended "Intertherm," a type of electric hot water baseboard heating. Defendant told plaintiff that Intertherm was a very good system, probably the best on the market. Plaintiff and defendant discussed the heating requirements of plaintiff's home but did not discuss ventilation. Plaintiff agreed to the installation of Intertherm and entered into a written contract with the defendant on December 20, 1969. Pursuant to that contract, defendant was to install an Intertherm system for $1,200. The installation was completed shortly thereafter.

Some time later one of the heating units began to leak and it was replaced by the defendant. The following winter plaintiff noticed the formation of mold and mildew around several windows. Plaintiff was remodeling at the time and assumed that the problem would clear up when the walls were stripped and repainted. However, repainting did not alleviate the mildew problem.

Two years later, in February, 1973, the heating unit in the family room threw off sparks. Plaintiff contacted the defendant, who explained how to turn

[1] Apparently, defendant John Clark was the only defendant who actually participated in the transactions involved in this action, and, as a matter of convenience, all further mention of the defendants in this case will relate to him alone.

that unit off and agreed to check out the problem after the weather cleared up. However, the defendant failed to do so even after several additional requests.

Finally, plaintiff contacted Mr. Kelley, a factory representative for Intertherm. He explained the problem with the defective heater and related his fear that other units might suffer from the same defect and present a fire danger. He told Kelley that the defendant would not check out the problem. Plaintiff also complained that the unit in the kitchen was not operative and that the existing equipment did not adequately heat the house. He noted that he had to use a portable heater in the family room and that he was heating the kitchen and dining room with the gas oven. Kelley agreed to inspect plaintiff's heating system.

There was a conflict in the testimony as to what Kelley told plaintiff when he inspected the heating system in May, 1973. However, the jury could have believed plaintiff's testimony that Kelley told him that several of the units were obsolete and that he would have the defendant replace them. In any event, Kelley did write to the defendant and asked him to replace several units—including the defective ones in the kitchen and family room.

While Kelley was there, plaintiff also explained his continuing problems with mold and mildew. Kelley told him that the mold was due to a lack of ventilation and indicated that several fans would be necessary to solve the problem. Kelley agreed to purchase the fans for plaintiff at plaintiff's expense and later did so.

Although defendant received a copy of Kelley's letter, he did not contact plaintiff concerning the replacement of any of the units. Consequently, several months later, in December, 1973, plaintiff called Kelley and complained that the situation had not been remedied. Kelley again wrote to defendant urging him to contact the plaintiff about replacing the units, but again there was no response.

Finally, in March, 1974, plaintiff filed this action seeking both general and punitive damages for allegedly fraudulent representations made in connection with the installation of his heating system. The jury returned a verdict in favor of the plaintiff, awarding both general damages and punitive damages.

Defendant appeals from the judgment entered on that verdict and assigns as error the trial court's failure to grant his motions for an involuntary nonsuit and a directed verdict on the grounds that plaintiff failed to prove a cause of action for fraud. The defendant also makes several other assignments of error, but a consideration of these other issues is not necessary to the disposition of this case.

■ In order to establish actionable fraud, the plaintiff must plead and prove the following elements:

> "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." Rice v. McAlister, 268 Or 125, 128, 519 P2d 1263 (1974); Conzelmann v. N. W. P. & D. Prod. Co., 190 Or 332, 225 P2d 757 (1950).

If any one of these elements is not established by clear and convincing evidence, plaintiff's case must fail. Conzelmann v. N. W. P. & D. Prod. Co., supra.

■ Plaintiff's complaint alleges that the following representations were made: first, that the Intertherm heating systeam "was a properly designed unit for [plaintiff's] home," and, second, that "the system installed would be a brand new, modern, up-to-date unit, the best of its type that money could buy." However, a reading of the record in this case discloses that no evidence was ever introduced to support the allegation that the first representation was made. The only evidence which even approaches that issue is con-

tained in the following two passages from plaintiff's testimony:

> "Well, Mr. Clark also gained my confidence and led me to believe that he would install a complete unit which would include fans. There's no way you can separate ventilation from heating.
>
> "* * * * *
>
> "No, I'm simply making the statement that Mr. Clark represented to me that he would finish a complete system, and he didn't do that; that he would furnish us an up to date system, he didn't do that; that he would service the units in the event that we had trouble, he didn't do that; he had agreed to furnish copper wiring, he didn't do that; he said he'd do his own work, and then he sublet it to his nephew, he didn't do his own work."

Nothing in this testimony, or any other testimony, establishes that the defendant actually represented to the plaintiff that the Intertherm heating system was a properly designed unit for the particular needs of plaintiff's home. At best, this evidence indicates that defendant promised to install "a complete unit," "a complete system," and that this promise was not kept.

■■ Similarly, the evidence pertaining to the second representation merely indicates that defendant may not have performed his obligation to install a system that would be "brand new, modern, up-to-date * * * the best of its type that money could buy." This evidence may have been sufficient to establish a breach of contract if this case had proceeded on that theory. However, such evidence is clearly insufficient to establish fraud. *See Cameron v. Edgemont Investment Co.,* 136 Or 385, 395, 299 P 698 (1931):

> "It is, of course, elementary that the mere nonperformance of a promise made, or the failure to carry out an intention expressed, in the course of negotiations, is neither fraud nor evidence of fraud."

*See also Butte Motor Co. v. Strand,* 225 Or 317, 358 P2d

279 (1960); *Conzelmann v. N.W. P. & D. Prod. Co.,* supra.[2]

As the plaintiff elected to bring an action for fraud, and as the record does not support a finding of fraud, the defendant's motions for a judgment of involuntary nonsuit and a directed verdict should have been granted.

Reversed.

---

[2]Fraud can never be predicated upon a promise to do something in the future unless it is alleged and proven that, at the time of the making of the promise, there was no present intention of performance or, alternatively, that the promise was made with reckless disregard as to whether the promissor could or could not perform. *See Elizaga v. Kaiser Found. Hospitals,* 259 Or 542, 487 P2d 870 (1971); *Butte Motor Co. v. Strand,* 225 Or 317, 358 P2d 279 (1960); *Conzelmann v. N. W. P. & D. Prod. Co.,* 190 Or 332, 225 P2d 757 (1950). In this case there was no allegation made and no evidence presented that the defendant did not fully intend to perform his agreement at the time he made it. This issue was never raised at trial, and plaintiff's brief does not attempt to interject this issue on appeal.