Glenda POPE

v.

**BETHESDA HEALTH CENTER, INC., et al.**

**Civ. A. No. N–85–533.**

United States District Court, D. Maryland.

Feb. 18, 1986.

Joseph E. Fitzpatrick, Jr., and Ward & Klein, Gaithersburg, Md., for plaintiff.

Jamie S. Gorelick, Randall J. Turk, and Miller, Cassidy, Larroca & Lewin, Washington, D.C., for defendant Bethesda Health Center, Inc.

James P. Salmon, and Sasscer, Clagett, Channing & Bucher, Upper Marlboro, Md., for defendant Liberty Mut. Ins. Co.

## MEMORANDUM

NORTHROP, Senior District Judge.

Pending before the Court are motions for summary judgment filed by defendant Bethesda Health Center (BHC) and defendant Liberty Mutual Insurance Company ("Liberty Mutual"). After reviewing the record in this case, the Court has determined that no hearing is necessary. Local Rule 6. For the reasons discussed below the motions are granted in part and denied in part.

### Facts

The plaintiff, Ms. Glenda Pope, began working for defendant BHC as a medicine aide on June 23, 1979. Approximately six months later, on December 29, 1979, the plaintiff slipped on some jello on the floor of a patient's room injuring her back. Ms. Pope continued working several more days after the incident, but ended her employ-ment at BHC in mid-January, 1980, and filed a claim with the Maryland Workmen's Compensation Commission on January 22, 1980. Subsequently, she began receiving total temporary disability benefits from BHC's worker compensation insurance carrier, Liberty Mutual. The plaintiff was unable to work for the next twenty-two months and received almost $10,000 in temporary total disability benefits.

In August, 1981, a recommendation was filed with the Maryland Workmen's Compensation Commission requesting that Liberty Mutual pay to the plaintiff an additional $4,000 as costs for retraining the plaintiff to become a Dental Assistant. Both defendants opposed the recommendation and the Commission scheduled a hearing for November 6, 1981 to review the matter.

On October 6, 1981, BHC contacted Ms. Pope and offered her a position as a ward clerk at the center as an alternative to her request for rehabilitation benefits. The plaintiff rejected that offer stating that she would consider such an offer only if the commissioner rejected her claim for rehabilitation benefits. At the November 6 hearing, the commissioner reserved ruling on her rehabilitation claim. The plaintiff went back to work at BHC as a ward clerk on November 19, 1981.

On November 25, the commissioner entered an order ruling that Ms. Pope was 60% permanently partially disabled and awarded her $38,400 in benefits. The written order further reserved any ruling on the plaintiff's claim for rehabilitation benefits. The defendants requested a rehearing, asserting that the record failed to indicate any basis for the commissioner's rating of a 60% permanent partial disability, and that since the November 6 hearing was limited to the issue of the plaintiff's claim for rehabilitation benefits, the commissioner was without authority to award any permanent partial disability payments. The commissioner then scheduled a rehearing for January 20, 1982 to address the defendant's concerns.

In early January, 1982 the plaintiff while working at the center discovered and photocopied a memorandum which indicated that BHC intended upon firing her immediately after the January 20, 1982 rehearing. The plaintiff alleges that the memorandum clearly indicated that the reason for her impending discharge was to retaliate for her filing claims with the Workmen's Compensation Commission.

The commissioner's rehearing was timely held and on February 2, 1982, the commissioner entered an order affirming his previous order.

On March 2, 1982, Ms. Pope became involved in a dispute while working at BHC, was ordered to leave, and never returned. On March 9, 1982 the defendants appealed the commissioner's rulings of November 25, 1981 and February 2, 1982 to the Montgomery County Circuit Court, in accordance with Md.Ann.Code Art. 101, § 56. A cross-appeal was filed by the plaintiff on March 15, 1982. Shortly before trial, on September 28, 1983, the parties executed a final compromise and settlement agreement, which was approved by the commissioner on October 17, 1983.

The plaintiff filed suit on October 19, 1984 in the Federal District Court for the District of Columbia alleging claims of fraudulent misrepresentation and wrongful discharge. The case was subsequently transferred to this Court on February 6, 1985.

In her complaint, the plaintiff states that the defendants conspired to defeat her attempts at procuring rehabilitation benefits under the Maryland Workmen's Compensation Act by fraudulently representing that she would be given a permanent position as a ward clerk at the defendant's center. She asserts that at the time the representation was made, the defendants had already determined that she would be discharged upon the commissioner's denial of rehabilitation benefits.

## Analysis

The first issue before the Court is whether the settlement agreement executed by the parties in September, 1983 precludes the plaintiff from maintaining this lawsuit. The final compromise and settlement agreement states in pertinent part:

NOW, THEREFORE, it is hereby agreed as follows:

1. The Employer/Insurer hereby agrees to pay to the Claimant the sum of Forty-Three Thousand Four Hundred Dollars ($43,400.00), such amount in addition to all temporary total disability compensation payments previously paid. (Employer/Insurer will receive a credit for all permanent partial disability compensation payments made under the Commission's Award of November 25, 1981.)

2. The Claimant hereby accepts the said agreement and the foresaid payment(s) in final compromise and settlement of any and all claims, except that her future right to necessary medical treatment related to her occupational injury sustained on the 29th day of December, 1979, will remain open and continue to be the responsibility of the Employer/Insurer, which the Claimant, his or her personal representation, dependents, husband, children or any other parties who might become beneficiaries under the said Workmen's Compensation Law, might now or could hereafter have under the provisions of the said Law, arising out of the aforesaid injury or disablement or the disability resulting therefrom, and does hereby, on behalf of himself or herself and all of said other parties, release and forever discharge the Employer/Insurer, their personal representatives, heirs, successors and assigns, from all other claims of whatsoever kind which might or could hereafter arise under the Workmen's Compensation Law from the said injury, disablement or disability. (Final Compromise and Settlement Agreement, p. 3).

The defendants contend that although the plaintiff has sued them for fraudulent misrepresentation and abusive discharge, these claims actually "arise under" the Maryland Workmen's Compensation Law,

and are thus barred by the language of the settlement agreement.

### A. *Fraudulent Misrepresentation*

In Maryland the elements of a cause of action for fraud are:

1. The defendant made a false representation of a material fact.

2. The falsity must have been known to the defendant, or the misrepresentation was made with such reckless indifference to truth as to impute knowledge to him.

3. The defendant must have made the representation for the purpose of defrauding the plaintiff.

4. The plaintiff relied upon the representation and had the right to do so and would not have done the thing from which the damage resulted if it had not been made.

5. The plaintiff actually suffered damage directly resulting from such fraudulent misrepresentation. *James v. Weisheit*, 279 Md. 41, 367 A.2d 482 (1977); *Wedeman v. City Chevrolet Co.*, 278 Md. 524, 366 A.2d 7 (1976); *Appel v. Hupfield*, 198 Md. 374, 84 A.2d 94 (1951); *Gittings v. Von Dorn*, 136 Md. 10, 109 A.2d 553 (1920); *Finch v. Hughes Aircraft Co.*, 57 Md.App. 190, 469 A.2d 867 (1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1190, 84 L.Ed.2d 336 (1985).

▰ In the instant case the plaintiff has satisfied the required elements. She has alleged that the defendants represented a permanent position as a ward clerk at their facility. At the time the representation was made, the defendants had already determined that she would be discharged in the near future. The purpose of the representation was to thwart the plaintiff's efforts in obtaining rehabilitation benefits. The plaintiff believed in good faith, that the defendants intended upon giving her permanent employment, and that she would have otherwise pursued her efforts to obtain rehabilitation benefits. Her reliance upon the defendant's representation caused her to shortly thereafter lose her job, income, seniority, and opportunity for retraining as a dental assistant.

The defendants assert that an essential element of her claim is damages. They contend that the damage Ms. Pope allegedly suffered as a result of the defendants' misrepresentation was her inability to pursue vocational rehabilitation benefits. They contend that these benefits are rights created by the Maryland Workmen's Compensation Act, Md.Ann.Code. Art. 101 § 36(9). Therefore, she is precluded from maintaining this cause of action, because she waived her right to these benefits when she executed the settlement agreement. That agreement expressly states that the claimant releases and forever discharges the defendants "from all other claims....which might....arise under the Workmen's Compensation Law from said injury." (Settlement agreement, p. 3).

▰ While the court acknowledges that the final compromise and settlement agreement does release the defendants from a claim for rehabilitation benefits, the plaintiff has clearly stated in her complaint that the defendants' fraudulent misrepresentation caused her other injuries separate and distinct from the potential rehabilitation benefits under the Workmen's Compensation Act. She states that the offer of permanent employment induced her to accept a position which in reality was only intended to be of extremely short duration. Her inevitable discharge thereby led to a loss of income and other accompanying injuries. The Court concludes that the plaintiff has stated a cause of action for fraudulent misrepresentation and that the executed release bars but one component of her damages.[1]

---

1. The defendants have further argued in their memoranda for summary judgment that the defendants never promised the plaintiff a permanent position. The Court concludes that there is a genuine dispute as to that issue and is not appropriate for determination at this stage of the litigation.

Secondly, they assert that the plaintiff has failed to satisfy the fourth element of the tort. They contend that the plaintiff had no right to rely on a promise of permanent employment. This ar-

## B. *Abusive Discharge*

The defendants move for summary judgment on the claim of abusive discharge on two distinct grounds.

 First, defendant Liberty Mutual asserts that under Maryland law, there is no civil cause of action available to a plaintiff who alleges that he or she has been discharged in retaliation for filing a workmen's compensation claim. This same argument was previously raised by defendant BHC and rejected by this Court on May 28, 1985. At that time this Court ruled that the cause of action for abusive discharge had been recognized by Maryland's highest court in *Adler v. American Standard Corp.*, 291 Md. 31, 432 A.2d 464 (1981). In that case, the Maryland Court of Appeals held that the State does recognize the tort "when the motivation for the discharge contravenes some clear mandate of public policy." *Id.* at 47, 432 A.2d 464. This Court concluded that "the criminal sanctions [under Md.Ann.Code art. 101 § 39A] clearly reveal that retaliatory termination because of an employee's filing of a workmen's compensation claim is a violation of Maryland public policy." *Pope v. Bethesda Health Center* at 798–99. Furthermore, this Court ruled that the Workmen's Compensation Act did not preclude a civil action based on retaliatory discharge since the Act itself did not offer the plaintiff a civil remedy. The Court adheres to its earlier ruling.

Secondly, the defendants maintain the settlement agreement has defeated the action for abusive discharge. The defendants contend that the basis of this claim arises solely from the plaintiff's alleged discharge for filing claims under the Workmen's Compensation Act.

The claim of abusive discharge in the instant case exists only because of the pro-hibition against such employee termination as contained in the Workmen's Compensation statute. This Court had previously concluded that the source of the plaintiff's right in the claim stems from the public policy against retaliatory firings as evidenced by the Maryland Workmen's Compensation Act, Art. 101 Md.Ann.Code § 39A. The Court additionally held that the Maryland Act does not in itself create a civil cause of action, since the statute provides only for criminal sanctions. The plaintiff's claim becomes viable only because the Maryland Court of Appeals has suggested that such a prohibition in the Maryland Workmen's Compensation statute gives evidence of public policy, thereby permitting an action for abusive discharge.

The issue to be determined is whether the plaintiff's claim of abusive discharge arises under the Maryland Workmen's Compensation statute. If it does, then the plaintiff's claim is barred by the settlement agreement as one "which might or could hereafter arise under the Workmen's Compensation Law ... (Final Compromise and Settlement Agreement, p. 3).

In the recent case of *Roberts v. Citicorp Diners Club, Inc.*, 597 F.Supp. 311 (D.Md. 1984), Chief Judge Kaufman of this Court held that a plaintiff's claim for retaliatory discharge by reason of his filing a claim for worker's compensation was an action "arising under" the Maryland Workmen's Compensation Statute:

> In the within case, plaintiff is asserting a substantive right created by a Maryland statute, i.e. section 39A of article 101, and a state remedy which Maryland's highest court ... has implied from that right.
> ... [T]he determination of whether ... the ... "civil action" is one "arising under the workmen's compensation laws of such state" seems to require this Court

---

gument was fully addressed in the courts earlier ruling denying dismissal, in which the Court stated:

".. [A]n at will employee has a legitimate expectation that she will not be terminated for merely filing a workmen's compensation claim. As it pertains to fraudulent misrepre-sentation, an at-will employee may reasonably rely upon an employee not terminating the employment filing for workmen's compensation." *Pope v. Bethesda Health Center, Inc.* 628 F.Supp. 797, 798–99 (D.Md.1985)

to look to the law of the State of Maryland to ascertain whether the within action arises under Maryland workmen's compensation laws. Examination reveals that the common law public policy remedy held ... to exist is closely intertwined with the legislative policy embodied in Maryland Workmen's Compensation statutes. Therefore this Court concludes that the within action [wrongful discharge] arises under those statutes. *Id.* at 314.

The Court agrees with the reasoning of Judge Kaufman and adopts his conclusion. The basis of the alleged wrongful discharge is predicated on the Maryland Workmen's Compensation Act. Therefore, the plaintiff's action for abusive discharge does "arise under the Maryland Workmen's Compensation Law" and is barred by the final compromise and settlement agreement.

### ORDER

In accordance with the foregoing Memorandum, and for the reasons set forth therein, IT IS, this 18th day of February, 1986, by the United States District Court for the District of Maryland, ORDERED:

1. That defendants' motions for Summary Judgment on the claim of fraudulent misrepresentation BE, and the same hereby IS, DENIED;

2. That defendants' motions for Summary Judgment on the claim of abusive discharge BE, and the same hereby IS, GRANTED;

3. That the Clerk of the Court shall mail copies of this Order and the foregoing Memorandum to counsel for the parties in this case.