Argued and submitted July 6, 1987, affirmed on appeal and cross-appeal January 25, reconsideration denied March 24, petition for review denied April 18, 1989
(307 Or 658)

HOCKS,
*Respondent - Cross-Appellant,*

*v.*

HOCKS et al,
*Appellants - Cross-Respondents.*

HOCKS et al,
*Plaintiffs - Cross-Respondents,*

*v.*

HOCKS,
*Defendant - Cross-Appellant.*

(A8601-00055, A8510-06129; CA A40357)

767 P2d 1369

James M. Callahan, Portland, argued the cause for appellants - cross-respondents Ruth C. Hocks. With him on the briefs was Bittner & Barker, P.C., Portland.

John H. Clough, Tualatin, argued the cause and filed the brief for respondent - cross-appellant.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Plaintiff brought this action, alleging, *inter alia,* fraud and breach of a contract to make a will against his mother (decedent's wife) as an individual and in her representative capacity as personal representative of plaintiff's father's estate.[1] He prevailed on his action against the estate for fraud. Defendant appeals, and we affirm.

We state the facts in the light most favorable to plaintiff after judgment. *Mulvihill v. Pacific Land Mgt.,* 276 Or 253, 554 P2d 488 (1976). Plaintiff's father was sole owner of Hocks Laboratories, a family business. Plaintiff was working as a bank officer in 1965 when his father persuaded him to leave his job at the bank to work for the family business. As inducement, his father promised him that, if he would come to work for the family business and work hard for low wages, his father would leave him 50 percent of the business in his will on the theory that he would have earned it and that plaintiff would be entitled to purchase the remaining 50 percent from father's estate. He relied on his father's promise, left his job and went to work for Hocks Laboratories, where he worked until his father died.

Until 1970, his father did nothing about a will; in that year, he executed one that left the entire business to his wife, if she survived him. In 1974, he executed a new will, which also left the entire business to his wife. Plaintiff was unaware of either will until his father died, and would not have continued his employment if he had known what they provided. His father continually assured him that he would inherit 50 percent of the business or receive an inheritance of equivalent value.

In 1983, plaintiff's father showed him a draft of a will that he had had prepared that would give plaintiff the right to purchase an 80 percent interest in the business for 50 percent of its value. Of the remaining 20 percent, 10 percent would go

---

[1] This action was consolidated for trial with an action filed by defendant against plaintiff, seeking declaratory relief, replevin, an accounting and damages for outrageous conduct. One judgment disposed of all claims against all parties in both cases. This appeal involves only plaintiff's claims against the personal representative. Plaintiff's cross-appeal needs consideration only if we reverse the fraud judgment from which this appeal is taken. Given our disposition of the appeal, we affirm on the cross-appeal.

to a "foundation" to be established to care for his wife, and 10 percent would be subject to an option to plaintiff's uncle to purchase at half its value. Plaintiff viewed that proposed will as reducing the share that he had been promised; however, he considered the bequest to be sufficient. In 1985, his father died, without having signed that will, having decided shortly before his death to leave the 1974 will in force. That will was admitted to probate and left the entire business to his wife, plaintiff's mother.

In his action against the personal representative, plaintiff alleged that his father breached an oral contract with him and also defrauded him. The trial court, sitting without a jury, found for plaintiff on the fraud claim and against him on the contract claim and awarded damages equivalent to approximately half the value of the business. On appeal, defendant argues that the required elements of fraud are not present, that evidence of damages is insufficient and that the trial court applied an improper measure of damages.

The elements of fraud are:

" '(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.' " *Webb v. Clark,* 274 Or 387, 391, 546 P2d 1078 (1976).

Defendant's primary contentions are that the father did not have the requisite fraudulent intent, because his statements were not false when they were made and that, even if they were made recklessly as to whether he would perform, that is insufficient to establish fraud. She relies on *Elizaga v. Kaiser Found. Hospitals,* 259 Or 542, 487 P2d 870 (1971), where the court held the defendant hospital liable for fraudulently inducing the plaintiff to come to work for it by promising him a job. In reliance on that promise, he moved his family to Oregon from the Philippines. The hospital knew, or had reason to know, that the Board of Medical Examiners would probably not allow it to continue the program under which it had promised to hire the plaintiff. The court affirmed the lower court's finding of fraud, stating:

"A failure to perform a promise is not a basis for an action for

fraud. Making a promise, however, with the knowledge that it probably cannot be performed or *with reckless disregard whether the promissor can or cannot perform can be the basis for an action of fraud.*" 259 Or at 548. (Emphasis supplied.)

■        It is true that, in *Elizaga,* the defendant was *unable* to perform its promise to employ plaintiff, whereas, here, the father was able to perform but did not. The quoted language from *Elizaga* was appropriate in that case, but there is nothing in that opinion to indicate that statements made in reckless disregard of whether they *would* be performed may not be the basis for an action for fraud. After all, a statement of intent is a statement of fact, and if a statement of fact is made with reckless disregard of whether it is true, it is actionable. We need not, however, resolve that question here, because one may be liable for fraud if he did not intend to fulfill the promise at the time it was made, *Webb v. Clark, supra; Conzelmann v. N.W. P.& D. Prod. Co.,* 190 Or 332, 225 P2d 757 (1950), even though the mere nonperformance of a promise, or the failure to carry out an expressed intention in itself, is neither fraud nor evidence of fraud. *Conzelmann v. N.W. P.& D. Prod. Co., supra,* 190 Or at 352; *Cameron v. Edgemont Investment Co.,* 136 Or 385, 299 P 698 (1931).

■        Here, the father's conduct amounted to more than a mere failure to perform his promise; he took affirmative actions both before and after his many representations and assurances that were completely inconsistent with the intentions expressed and the assurances given by him to plaintiff. His initial promise that, if plaintiff came to work for the family business at a low salary, he would be earning an interest in the business, was repeated frequently over the years in one form or another. Yet, during the time that he was making those representations, he executed two wills that not only did not carry out those assurances but were contrary to them. That conduct is evidence that he did not actually intend to carry out the repeated promises and assurances.

Although it is true that there is evidence that the father stated to others that he planned to give plaintiff a substantial interest in the business, the factfinder could reasonably infer that those statements were made with the expectation that they would be related to plaintiff. At the very least, the evidence indicates that he was not certain that he wanted

to leave his business to his son. If that were the case, his unqualified representations and assurances to plaintiff that he would give him a substantial interest in the business were knowingly false and were made time and again in order to keep his son working for him. The trial court could reasonably find that the statements were false, that they were made with the intention that plaintiff rely on them and that plaintiff did rely on them.[2]

■ ■　Defendant contends that the trial court could not conclude, consistently, that there was insufficient evidence to find a contract to make a will and, at the same time, find sufficient evidence of fraud. The determinations are not necessarily inconsistent. To find an enforceable oral contract to make a will, the terms of the contract must be definite. *Tigglebeck v. Russell et al.,* 187 Or 554, 213 P2d 156 (1949). The evidence indicates that plaintiff and his father never reached an agreement as to how plaintiff was to obtain his interest in the business—whether plaintiff would inherit 50 percent of the business outright or whether plaintiff would be given the right by will to purchase the business at 50 percent of its value. The court could have decided that the terms were, therefore, too indefinite to be enforceable as a contract to make a will. The fact remains, however, that the gist of what plaintiff was assured was that, if he worked for the family business at a low salary, he would be earning a substantial interest in the business and would enjoy that interest after his father's death, if he did not get it before. That interest was represented to be "about" 50 percent, and he was assured that his father's will

---

[2] Defendant contends for the first time on appeal that the allegations in the complaint were insufficient to state a claim for fraud. In *Fulton Ins. v. White Motor Corp.,* 261 Or 206, 219, 493 P2d 138 (1972), the Supreme Court stated:

"[W]here the defect in a pleading, even though material, consists of a mere omission to state a necessary fact, and it appears that the omitted fact could have been added by amendment, the entire record will be examined when the pleading is attacked for the first time on appeal. If we can determine that the omission did not result in surprise or prejudice, or prevent a full trial of the real issues between the parties, and that the evidence disclosed the existence of a cause of action, we will not reverse, but will treat the case as though the question had been raised at the proper time and the pleadings amended accordingly."

Whatever shortcomings might have existed in plaintiff's pleadings did not surprise or prejudice defendant and could have been cured by amendment if the question had been timely raised.

would give him the right to buy the rest of the business. Plaintiff relied on those representations in giving up a higher paying job to go to work for his father and in remaining there until his father's death.

■   Defendant assigns error to the trial court's denial of her motion to dismiss for insufficiency of evidence of plaintiff's damages. The trial court awarded plaintiff an amount that approximated a 50 percent interest in the business. Defendant contends that the court applied the benefit of the bargain measure of damages, whereas the proper measure is the difference between the amount of money that plaintiff would have received working somewhere else for the 20 years that he spent working for his father and the amount that he earned working for the family business and that there is insufficient evidence to determine that amount. She relies on *Elizaga v. Kaiser Found. Hospitals, supra,* in which the damages awarded were based on the difference between what the plaintiff had earned in another job and what he was entitled to earn under the employment contract. Here, the trial court apparently found that the fraudulent promise was that, if plaintiff came to work at a low wage, he would be entitled to a substantial interest in the business if he continued and that that interest would be approximately 50 percent if he remained until his father died. There is evidence to support that finding. Accordingly, the trial court awarded plaintiff damages roughly equivalent to what he would have received under the employment agreement with his father. We find no error. As the court said in *Dizick v. Umpqua Community College,* 287 Or 303, 312, 599 P2d 444 (1979):

> "When the alleged fraud does not involve the sale of property, the proper measure of damages must be flexible to compensate the plaintiff for whatever loss he has suffered."

■   Defendant argues that, even if the trial court was correct in awarding damages based on the value of the interest promised to plaintiff, it was incorrect in its determination of the value of the business. There is, however, competent evidence that would permit the court to find that the value of the business was over twice the amount awarded to plaintiff.[3]

---

[3] Defendant contends that the trial court erred by including the value of certain bonds and real estate in its valuation of the business. However, plaintiff testified that those assets belonged to the business. We "must affirm if there was any competent evidence to support the findings and judgment of the trial court and plaintiff is entitled to the benefit of all favorable evidence and all reasonable inferences from such evidence." *Foelker v. Kwake,* 279 Or 379, 381, 568 P2d 1369 (1977).

We have considered defendant's other assignments and find no error.

Affirmed on appeal and cross-appeal.