Argued and submitted January 13, reversed and remanded April 26, 1995

## Henry JOHNSEN,
*Appellant,*

*v.*

## MEL-KEN MOTORS, INC.,
an Oregon corporation,
*Respondent.*

(9304-02136; CA A83405)

894 P2d 540

Scott N. Hunt argued the cause for appellant. With him on the briefs was Richard C. Busse.

Kenneth E. Bemis argued the cause for respondent. With him on the brief were Jonathan T. Harnish and Bullard, Korshoj, Smith & Jernstedt.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

Plaintiff appeals from a summary judgment in favor of defendant on plaintiff's claims of intentional misrepresentation and unlawful employment practices. ORCP 47. Plaintiff argues that there are genuine issues of material fact on each claim that preclude summary judgment. We reverse.

> "Summary judgment is proper when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. On review of the summary judgment, we review the record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Mittleman Properties v. Bank of California*, 131 Or App 666, 668, 886 P2d 1061 (1994). (Citations omitted.)

The summary judgment record indicates that defendant hired plaintiff in June 1990, as a heavy line auto mechanic. In September 1990, plaintiff twisted his knee and tore some of the knee cartilage while repairing a customer's brakes. Plaintiff filed a claim for workers' compensation benefits in January 1991, which was eventually accepted by defendant's insurer. Because of the extent of his injury, and based on his doctor's advice, plaintiff did not immediately return to work.

In April 1991, plaintiff had surgery on his knee. Thereafter, defendant's insurer hired Young, a vocational expert, to evaluate plaintiff's condition and determine whether he should pursue reemployment with defendant through worksite modification or training and educational benefits in another vocation. Both alternatives are programs that were available to plaintiff through the workers' compensation system. ORS 656.340; ORS 656.622. The first alternative contemplates the return of the injured worker to the worker's previous employment by modifying the worksite with funds provided by the state. The second alternative includes benefits provided by the employer's insurer.

Young explained in her deposition that, in determining the appropriate program for plaintiff, her first priority was to ascertain whether he could return to defendant's employ and to the same work that he had done before his injury. If not, her next step was to consider whether he could return to employment with defendant if the worksite was modified. If the employer does not believe that worksite

modification is possible, Young explained that her next action is to recommend that the worker participate in training or education for a new vocation. She met with plaintiff to discuss these alternatives, and he told her that he was concerned about whether his employment with defendant would be "long-term" if he chose a worksite modification program. Thereafter, Young contacted defendant to see whether plaintiff's return to defendant's employ with worksite modifications was possible and to ascertain the potential duration of plaintiff's job with defendant if he returned to work there.[1]

Young testified that she told defendant the same thing that she tells every employer when she and the injured employee are considering worksite modifications:

> "Employers are informed these are State monies dedicated to returning workers to positions of employment, and if not, what they were doing at the time of injury other than suitable modified work of the employee injury. The purpose of these funds was to provide suitable modified permanent work; 'permanent' understood to mean within the confines of any reasonable content. For example, an employee has to abide by the rules the other employees do. Business has to be maintained at a usual level, that the employer has no above average obligation to returning an injured worker to work. On the other hand, I always inform an employer that I expect them to be ethical * * *."

Defendant "indicated" to Young that its intention was to place plaintiff in a permanent, long-term, as distinguished from temporary, position, "but * * * always qualified by economic conditions." Defendant also told Young that it considered plaintiff a valuable employee and was willing to do a worksite modification in order to keep him employed. Young then conveyed this information to plaintiff.[2]

In October 1991, plaintiff, defendant and a representative of the Department of Insurance and Finance met and

---

[1] Young stated in her deposition that she would never facilitate a return to employment through worksite modifications if she believed the employment would be of short duration.

[2] Plaintiff stated in his deposition that Young told him that defendant had represented to her that plaintiff could have his job "for as long as he wanted it." However, plaintiff does not take issue with the fact that Young also explained that the promise was subject to "the conditions for all employees at a company and * * * based on the company's ability to provide employment."

signed a worksite modification agreement. The agreement listed the equipment to be used in modifying plaintiff's worksite, its cost and to whom each piece of equipment belonged on the expiration of the agreement. According to the agreement, most of the equipment went to defendant when the agreement expired, but some went to plaintiff. The agreement also stated:

"1. The employer agrees to employ the worker in an approved suitable job according to the same business practices and personnel policies affecting all employees.

"* * * * *

"10. If this agreement is terminated [before the expiration date] because of any breach, default, or omission by the employer, the employer will reimburse the Department [of Insurance and Finance] for all costs as determined appropriate by the Department."

The agreement's expiration date was February 1, 1992.

Apparently, while Young pursued worksite modifications on behalf of plaintiff, plaintiff's attorney requested that plaintiff be declared eligible for vocational assistance. Plaintiff's eligibility was dependent on his inability to return to suitable work with an employer. Defendant's insurer relied on the agreement to reemploy plaintiff with worksite modifications as indicative of plaintiff's ineligibility for vocational assistance, and refused the request. Thereupon, plaintiff's attorney requested that the Department of Insurance and Finance review defendant's insurer's decision. The department determined that plaintiff was ineligible for vocational assistance.

Plaintiff did not return to work until December 1991, when the installation of worksite modification equipment was completed. During his absence, defendant had hired another heavy line mechanic to help with the work "since we were short one." When plaintiff returned to work, he did the same work that he had done before his injury except for the rebuilding of engines. On February 24, 1992, plaintiff's physician declared him to be medically stationary. On March 13, 1992, defendant discharged plaintiff, stating that a slowdown in business had necessitated the discharge.

One of the principals of defendant, Kenneth Farley, testified in his deposition that defendant's business had been dragging for "anywhere from eight months to a year" before defendant discharged plaintiff. However, defendant never expressed to Young a concern about a slowdown in business when she inquired about defendant's intentions regarding the duration of plaintiff's employment. Furthermore, Farley acknowledged that at the time defendant hired the new mechanic, it was considering laying off workers because of slow business. After his discharge, plaintiff again applied for vocational assistance, but it was denied because defendant's insurer determined that his disability did not render him unable to continue his job with defendant.

Plaintiff alleges three claims against defendant arising from his discharge from employment: (1) unlawful employment practices, because he was discharged for using workers' compensation benefits, ORS 659.410; (2) unlawful employment practices, because he was discriminated against because of his disability, ORS 659.425; and (3) intentional misrepresentation. The trial court ruled that plaintiff failed to produce any evidence that defendant unlawfully discriminated against him or intentionally misrepresented any material fact to him. Both discrimination statutes require as an element of liability that the employer "intend" to discriminate against the employee.

In his memorandum responding to defendant's motion for summary judgment, plaintiff explained that his claims of unlawful discrimination are

"that he was discriminated against * * * because he filed a workers' compensation claim (First Claim) * * * because Defendant failed to reasonably accommodate his physical limitations (Second Claim); and/or * * * because he was perceived to be a physically impaired person (Second Claim)."

Defendant responded that, because of the slowdown in business, it was forced to discharge one of its mechanics and, in assessing each mechanic's skill level, experience and productivity, plaintiff ranked lowest in ability among the mechanics. Thus, it had no intent to discriminate against plaintiff because he had sought workers' compensation benefits or because of his disability when it terminated his employment.

Initially, we review the trial court's ruling on plaintiff's claims of unlawful employment practices. ORS 659.410 provides, in part:

"(1) It is an unlawful employment practice for an employer to discriminate against a worker with respect to hire or tenure or any term or condition of employment because the worker has applied for benefits or invoked or utilized the procedures provided for in ORS chapter 656 or of ORS 659.400 to 659.460 or has given testimony under the provisions of such sections."

ORS 659.425 provides, in part:

"(1) For the purpose of ORS 659.400 to 659.460, it is an unlawful employment practice for any employer to refuse to hire, employ or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment because:

"(a) An individual has a physical or mental impairment which, with reasonable accommodation by the employer, does not prevent the performance of the work involved;

"(b) An individual has a record of a physical or mental impairment; or

"(c) An individual is regarded as having a physical or mental impairment."

First, we consider the summary judgment evidentiary record in the light of ORS 659.410. ORS 659.410 makes it unlawful for an employer to discharge an employee because the employee "has applied for benefits or invoked or utilized the procedure provided for in ORS chapter 656." Plaintiff argues that because he was discharged soon after he was declared medically stationary, there is an inference that his discharge was the result of his application for and utilization of the benefits provided by the workers' compensation law. We disagree because we perceive no nexus between the medical determination and the discharge.

Next, plaintiff points out that defendant admits that it had expressed no complaints about plaintiff's work performance until he returned to work after the worksite modifications were completed. Plaintiff argues that the foregoing fact should be considered with the following facts: (1) that defendant hired a replacement for plaintiff during plaintiff's absence at the same time that it was considering layoffs;

(2) that it retained the new mechanic instead of plaintiff when it discharged plaintiff; and (3) that it discharged plaintiff shortly after the modification agreement terminated. Plaintiff claims that from these facts there arises an inference that defendant intended to discriminate against plaintiff because he had utilized the benefits of the workers' compensation system. In other words, it is plaintiff's theory that defendant entered into the worksite agreement as a subterfuge to conceal its intent to rid itself of an injured employee. Once the worksite modification agreement expired, then, according to plaintiff's theory, defendant's plot would result in defendant being able to discharge plaintiff with impunity on the pretext of poor economic conditions.

■ Moreover, there is evidence that defendant knew that its workers' compensation insurance premium rates were dependent on its work history, which included the charges from each workers' compensation claim made against it, that defendant believed plaintiff's claim to be the most expensive claim it had experienced in the last five years, and that an injured worker's utilization of vocational assistance could affect its insurance rates, whereas the worksite modifications would not. We agree with plaintiff that all of this evidence could give rise to a reasonable inference that his discharge was based on his utilization of workers' compensation benefits. As a result, the trial court erred in granting summary judgment on the first claim.

■ Plaintiff's second claim is based on ORS 659.425. That statute makes it an unlawful employment practice to discharge an employee because the employee has a physical impairment "which with reasonable accommodation by the employer, does not prevent the performance of the work involved." We examine the totality of the circumstances surrounding plaintiff's discharge.[3] Plaintiff points to evidence that with the worksite modifications, his physical impairment did not inhibit the adequate performance of the work assigned to him. Also he argues that the evidence demonstrates that defendant made its decision to discharge

---

[3] *See Shockey v. City of Portland*, 100 Or App 166, 170, 785 P2d 776 (1990), *rev'd on other grounds* 313 Or 414, 837 P2d 505 (1992), *cert den* ____ US ____, 113 S Ct 1813, 123 L Ed 2d 444 (1993) (concluding from the totality of the evidence that the defendant's motivation for terminating the plaintiff was unlawful).

him without making an evaluation based on his actual performance in comparison with the performance of the other mechanics. Additionally, plaintiff contends that defendant's hiring of the nondisabled replacement worker at a time when it was considering layoffs, and its retention of the replacement worker instead of plaintiff, when considered with the other facts, creates a reasonable inference that he was discharged because defendant was unwilling to continue to afford reasonable accommodation for his physical impairment after the worksite modification agreement expired.

■ Defendant responds that the events relied on by plaintiff are too remote from his eventual discharge to support an inference of discrimination as a matter of law. We disagree. A trier of fact could find from the evidence that defendant only intended to accommodate plaintiff's disability so long as the worksite agreement was in effect. Once it was over, defendant may have felt at liberty to discharge plaintiff, a disabled worker, even though his work performance was adequate. When plaintiff is given the benefit of all of the reasonable inferences that arise from the facts most favorable to him, a reasonable trier of fact could conclude that ORS 659.425 was violated. Consequently, the trial court erred when it granted summary judgment on the second claim of unlawful discrimination.

■ Plaintiff also assigns error to the summary judgment on his intentional misrepresentation claim. The elements of intentional misrepresentation are:

" '(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.' " *Webb v. Clark*, 274 Or 387, 391, 546 P2d 1078 (1976) (quoting *Rice v. McAlister*, 268 Or 125, 128, 519 P2d 1263 (1974)).

Plaintiff claims:

"Defendant, in order to frustrate and defeat vocational retraining for Plaintiff under the workers' compensation system, knowingly and intentionally misrepresented to persons in positions of authority, that, with the installation of

the special equipment, Plaintiff would be able to keep his job on a long-term basis for as long as he wanted it. At the time of said misrepresentation Defendant knew it to be false. Plaintiff and his case worker reasonably relied to Plaintiff's detriment upon said representation and as a result did not pursue vocational training benefits for Plaintiff."

■ In order for plaintiff to prove the element of representation, he must produce evidence that defendant (1) made a representation to plaintiff, or (2) made a representation to an agent of plaintiff or (3) made a representation to Young with the intention that it be communicated to and acted upon by plaintiff, or under circumstances that entitled plaintiff to believe that defendant had authorized Young to communicate the representation to plaintiff. *See American National Bank of Denver v. Tonkin,* 286 Or 73, 82-83, 592 P2d 1008 (1979) (explaining the various forms of actionable representations made through a third person). Defendant argues that there is no evidence that any representation was made to plaintiff about the duration of employment. It is uncontroverted that defendant made no representations directly to plaintiff, nor did plaintiff have the right to control Young's actions, a necessary element of a principal/agent relationship. Young was hired by defendant's insurer to evaluate plaintiff's vocational circumstances. She determined that plaintiff was not eligible for vocational assistance, based on a meeting with plaintiff, a meeting with defendant, "conversations, * * * a professional evaluation, [and a] preparation of a job analysis." Although her main responsibility was to assist plaintiff in returning to suitable work, she had no obligation to follow his directions regarding what work would be suitable. Plaintiff's only prerogative was his ability to refuse the workers' compensation services that she offered.

Nevertheless, the evidence also indicates that plaintiff's acceptance of Young's recommendation to enter into the worksite modification agreement was due in large part to defendant's representation regarding the duration of employment. Furthermore, once plaintiff chose the worksite modification option, he was "actively involved in obtaining the work site modifications, getting the bids, identifying what we needed." Finally, defendant, plaintiff, and a representative of the Department of Insurance and Finance all met together to sign the worksite agreement. It could be reasonably inferred

from all the evidence that defendant made the representation to Young about the permanence of employment with the intention that it be conveyed to plaintiff in order to induce him not to pursue vocational retraining.

■      Next, defendant argues that it did not make any misrepresentations to Young. It argues that it represented to Young that plaintiff would have permanent, full-time work, as opposed to temporary work, but that the duration of the employment was subject to economic conditions and it was a decline in the workload that occasioned defendant's discharge. We conclude that the fact that defendant said that the offer of continued employment was dependent on economic conditions has no effect on plaintiff's theory of the case. We understand plaintiff's argument to be that defendant intended to terminate plaintiff's employment as soon as the worksite modification agreement was terminated, regardless of the economic conditions. In discussing the discrimination claims, we have already concluded that such an inference could be drawn from the evidence. If a trier of fact were to draw that inference, then any decline of economic conditions in March 1992 played no role in the decision to discharge plaintiff. Therefore, we conclude that there are genuine issues of material fact as to whether defendant represented that plaintiff was "guaranteed employment of a permanent nature" in order to foil plaintiff's pursuit of vocational retraining and whether it had already determined at the time of the offer that it would discharge him once the worksite agreement was completed. *See Pope v. Bethesda Health Center*, 628 F Supp 797 (D Md 1986), *rev'd on other grounds* 813 F2d 1306 (4th Cir 1987)(involving analogous facts).[4]

Reversed and remanded.

---

[4] At summary judgment, plaintiff actually argued two different misrepresentations. The first one we have already discussed. The second one is that defendant represented that it had permanent employment for plaintiff, in reckless disregard of the fact that it knew that it was experiencing a slow-down in business and had been considering layoffs. However, we need not address whether plaintiff sufficiently pled that allegation, because we have already found that there are genuine issues of material fact under the first allegation of fraud.