57 F.3d 1076
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 BOULDERS ON THE RIVER, INC., an Arizona corporation; Hrebec
Properties, Inc., an Arizona corporation; Hrebec
Management, Inc., an Arizona corporation; Peter Hrebec,
III; James J. Miller, Plaintiffs-Appellants,
v.
FIRST INTERSTATE BANK OF CALIFORNIA, a California
corporation; First Interstate Mortgage Company, a
California corporation, Defendants-Appellees.
 No. 93-35780.
 United States Court of Appeals, Ninth Circuit.
 June 7, 1995.
 
 Before BROWNING, REAVLEY* and NORRIS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 I.
 
 2
 Because "there is no apparent conflict between the relevant principles of [California] and Oregon law," the district court did not err in applying Oregon law. Deerfield Commodities v. Nerco, Inc., 696 P.2d 1096, 1104 (Or.App.1985). Because Cal.Civ.Code Sec. 1624(g) was not operative until January 1, 1990, well after the 1989 events that Boulder claims gave rise to a contract, California's statute of frauds is inapplicable to this dispute. See Cal.Civ.Code Sec. 1624 note re: statute's history; see also Estate of Nicoletti, 129 Cal.App.3d 475, 479 (1982) (an individual's rights are affected by a provision only after it becomes "operative").
 
 II.
 
 3
 Boulders failed to create a genuine issue of material fact as to the existence of a loan contract. Where unidentified terms are ascertainable by "an objective method agreed upon by ... the parties," absence of those terms will not render the contract invalid, Siegner v. Interstate Prod. Credit Ass'n, 820 P.2d 20, 29 (Or.App.1991), and the HUD commitment arguably would have supplied most of the alleged contract's material terms. However, it would not have supplied terms regarding Boulders's payment of draws on the letters of credit.
 
 III.
 
 4
 Boulders's claim of promissory estoppel founders on the same reef. Promissory estoppel is generally regarded as a substitute for lack of consideration, Hill v. Mayers, 802 P.2d 694, 695 (Or.App.1990), not as a cure for uncertainty of terms. Boulders submits no Oregon case recognizing a cause of action for promissory estoppel despite a lack of certainty as to material terms. The Oregon Court of Appeals's descriptive statement in Bixler v. First National Bank, 619 P.2d 895, 898 n. 4 (Or.App.1980), is not a statement of Oregon law.
 
 IV.
 
 5
 Boulders created a triable issue as to each of the nine elements required for fraud. See Webb v. Clark, 546 P.2d 1078 (Or.1976).[1] Boulders presented evidence that Starr made a false representation regarding First Interstate's intention to provide unsecured letters of credit. There is evidence that Starr knew that Boulders could not (or would not) provide collateral for any letters of credit necessary for the project. See E.R. 73-74, 116, 384-86. There is also evidence that, knowing Boulders required unsecured letters of credit, Starr nonetheless "assured [Boulders] that First Interstate would provide the letters of credit." E.R. at 116; see also E.R. at 124. A jury could find that this representation, made in the context of Starr's knowledge of Boulders's inability or unwillingness to provide collateral, amounted to a representation that the Bank was seriously interested in providing Boulders with unsecured letters of credit. A jury could then find that this representation was reckless since Starr should have inquired whether the Bank would issue an unsecured letter of credit. See E.R. at 77.
 
 
 6
 No one disputes that the representation was material, that Boulders had no knowledge that the representation was false, or that Starr made the representation in order to encourage Boulders to continue its negotiations with First Interstate rather than with Pacific First Federal. Thomas Leathers's statement that Boulders reasonably could have believed that the January 30, 1989 letter was binding on First Interstate because of Starr's apparent authority as vice president, and that "the only reasonable [reading of the letter] is that First Interstate would provide the letters of credit unsecured," ER 280, 282, 283-84, is sufficient evidence to raise a material issue of fact as to whether Boulders could have reasonably relied on Starr's representation.[2] Finally, Boulders presented evidence that it relied on the promise by abandoning further negotiations with Pacific First Federal, opening an office in Eugene, and making other substantial expenditures. ER 116.
 
 
 7
 Each party is to bear its own costs.
 
 
 8
 AFFIRMED IN PART, REVERSED IN PART, and REMANDED.
 
 REAVLEY, Circuit Judge, Dissenting:
 
 9
 If no contract had been anticipated and Starr had recklessly misrepresented the intention of First Interstate to issue unsecured letters of credit, and if plaintiffs had relied on that misrepresented intention to their detriment, perhaps Oregon law would allow plaintiffs a claim for tortious damages. Whether or not plaintiffs might have a claim under those facts, we have a different case. Here the plaintiffs were entitled to proceed only upon obtaining a loan contract with First Interstate. Without a loan contract, there was to be no letter of credit, secured or unsecured. There could be no reliance on letters of credit until and unless the loan contract was agreed to. Plaintiffs could not act upon a promise to provide unsecured letters of credit apart from a contract between the parties.
 
 
 10
 Starr and the plaintiffs expected First Interstate to agree to their proposal. First Interstate did not do so. There was no contract and no First Interstate liability. I would affirm.
 
 
 
 *
 The Honorable Thomas M. Reavley, Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Under Oregon law the elements of fraud are "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." Webb, 546 P.2d at 1080
 
 
 [2]
 The dissent argues that Boulders could not reasonably rely on a representation that unsecured letters of credit would be provided unless it also had an enforceable contract for the underlying loan. However, Boulders may be able to show that it reasonably believed that if unsecured letters of credit were provided, the other details of the contract would have been worked out and, therefore, it reasonably relied upon the representation in abandoning other financing opportunities and pursuing the negotiations with the defendants. This is an issue of fact that must be left for trial